## J. C. McClelland v. A. H. Erwin.

(Filed February 15, 1906.)

1. APPEAL —Not Dismissed, When—Contest for Political Office. Where a case is brought to this court by appeal, and when the action is a contest for the possession of a political office, and where pending the appeal, the term of office has expired, and the appellant's right to the position is terminated thereby, this court will not dismiss the appeal for this reason where any legal substantial right of the party, other than the question of costs, depends upon a decision of the case, but the court will hear and decide the case upon the legal rights of the parties as they existed at the time of the decision in the court from which the appeal is taken.

2. ELECTION LAWS—Construed—Ballots Valid, When. The provisions of section 41, of chapter 33, Wilson's Revised Statutes, known as "Election Law" which provides that the voter shall indicate his choice by stamping a cross in a square on the ballot

immediately preceding the name of the candidate of his choice, as to the stamping is directory only, and ballots, if in other respects regular, will, in the absence of fraud, be counted, although marked with a pencil.

3. SAME—Character of Distinguishing Mark. Under the election laws of this territory, providing that no ballot shall be counted which bears any distinguishing mark: Held, that such distinguishing mark must be one, whether letters, figures, or characters, that shows an intention on the part of the voter, to distinguish his particular ballot from the others of its class, and not one that is common to, and not distinguishable from other of a designated class.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before Bayard T. Hainer, Trial Judge.*

*W. K. Moore,* for plaintiff in error.

*Barnum & Burns,* and *J. B. Diggs,* for defendant in error.

### STATEMENT OF FACTS.

This was an action brought in the district court of Kay county, to try the title to the office of police judge of the city of Ponca City, a city of the first class. The plaintiff in error, J. C. McClelland, was the candidate on the Republican ticket for police judge, and A. H. Erwin, was the Democratic candidate for said office. The election was held on the 7th day of April, 1903, and upon a canvass of the votes, the plaintiff in error and defendant in error were found to have an equal number of votes, to wit; Three hundred (300). Lots were drawn in which the defendant in error won, and a certificate of election was issued to him. The plaintiff thereupon commenced this action. C. L. Pinkham was appointed referee on the 8th day of October, 1904, and afterwards, in the same year, filed his report, finding that the plaintiff in error had received 297 votes, and the defendant in error had received

299 votes, and recommended as his conclusion of law, that judgment be rendered for the defendant in error. Objections to the report of the referee were filed by the plaintiff in error, which objections were by the court overruled. The report of the referee was then approved by the court and judgment rendered thereon for the defendant in error, declaring him police judge of Ponca City, and assessed the costs to the plaintiff in error. Motion for new trial was filed by the plaintiff in error, which was by the court overruled, exceptions saved, and the case brought here for review.

Opinion of the court by

IRWIN, J.: The first proposition in the case, which we will discuss briefly, is the motion of the defendant in error to dismiss the appeal, for the reason that the term of office for the recovery of which this action is brought having expired, it would be impossible for this court to grant the relief prayed for, namely, the removal of one person from the office, and the indicting of another therein. And it is therefore contended, that as the full relief asked for, to wit: the restoring to plaintiff in error of the office which he seeks, and the furniture, fixtures, and appliances thereof, could not be granted because the term for which he claims to have been elected having expired, that for that reason this court should dismiss the appeal, as nothing further remains in the case except a question of who should pay the costs. We do not think this contention can be maintained, as in our view of the case, a right of the plaintiff in error other than the question of costs is involved in this decision. If his contention is correct, that he was legally elected to the office in question, when that fact is once shown in a legal way, he would be entitled

to the fees, salary and emoluments of the office for the term for which he was elected, and this is a substantial, vested right, which would be lost to him if this court should sustain the motion to dismiss this appeal. But this question has already been passed upon by this court on the motion filed asking for a dismissal of the appeal.

The first ground for reversal urged by the plaintiff in error is, that the ballots mentioned in the report of the referee, and described as those marked with a lead pencil, should have been excluded from the count by the referee in determining this contest. Section 41, of Chapter 33, Wilson's Revised Statutes, which is known as the "Election Law", provides, among other things, that the voter shall indicate his choice by stamping a cross in the square on the ballot immediately preceding the name of the candidate of his choice. Now we believe the true rule to be, that this statute, so far as it relates to the stamping of the ballot, is directory only, and that the ballots which are in every other respect regular, in the absence of fraud, should not be declared invalid or excluded from the count for the sole reason that the cross is made with a lead pencil instead of having the cross placed there by a stamp.

In the case of *Houston v. Steele,* reported in the 34 S. W. at page 6, the court of appeals of Kentucky, in passing upon a statute which provided that all markings upon a ballot shall be made with a black ink stencil, held that this provision was directory, and therefore a black, or red lead pencil mark is sufficient in the absence of fraud.

In the case of *Spurgin v. Thompson,* reported in the 55th N. W. at page 297, the supreme court of Nebraska say:

"While the statute requires that the cross which signifies the preference of the elector shall, in ink, be placed in a space

designated for that purpose, a ballot upon which such prefer-
ence is indicated by a cross made with a lead pencil, outside
the space designated, but opposite the name of the choice of
the elector, should be counted according to such manifest
intention."

In the case of *State ex rel. Waggoner, v. Russel, et al.,*
reported in the 51 N. W. at page 465, the Nebraska supreme
court say:

"The provisions in section 20 of the act approved March
4, 1891, known as the 'Australian Ballot Law' for the mark-
ing of ballots with ink, is directory only, and ballots, if in
other respects regular, will, in the absence of fraud, be
counted, although marked with a pencil.

In this Nebraska case, the questions presented involved
a construction of section 20, of the act approved March 4,
1891, known as the "Australian Ballot Law." The provision
of that act as to the manner of voting, is as follows:

"When any duly qualified elector shall present himself
at the polling place of his election district or precinct, for
the purpose of voting at any election then in progress, he shall
receive from a member of the election board a ballot, upon
the back of which two members of the board shall first write
their names in ink. The elector shall then forthwith proceed
alone into the compartment, if one be then unoccupied, and
shall prepare his ballot by marking in the appropriate margin
or place a cross (x) with ink opposite the name of the can-
didate of his choice for each office to be filled. * * *"

In the opinion the court says:

"In the construction of statutes of this character, it is
important to keep in mind two recognized principles: First,
that the legislative will is the supreme law, and the legis-
lature may prescribe the forms to be observed in the con-
ducting of elections, and provide that such method shall be

exclusive of all others; second, since the first consideration
of the state is to give effect to the expressed will of the ma-
jority, it is directly interested in having each voter cast a
ballot in accordance with the dictates of his individual judg-
ment.   Recognizing the principle first stated, the courts have
uniformly held that when the statute expressly, or by fair
implication, declares any act to be essential to a valid election,
or that an act shall be performed in a given manner, and no
other, such provisions are mandatory and exclusive.   By an
application of the second principle, the courts, in order to
give effect to the will of the majority, and to prevent the dis-.
franchising of legal voters, have quite as uniformly held those
provisions to be formal and directory merely, which are not
essential to a fair election, unless such provisions are declared
to be essential by the statute itself.   Judge McCrary, in the
last edition of his excellent work on the Law of Elections
(section 190) states the rule as follows: 'If the statute ex-
pressly declares any particular act to be essential to the valid-
ity of the election, or that its omission shall render the elec-
tion void, all courts whose duty it is to enforce such statute
must so hold, whether the particular act in question goes to
the merits, or affects the result of the election, or not.   Such
a statute is imperative, and all considerations touching its
policy or impolicy must be addressed to the legislature.   But
if, as in most cases, the statute simply provides that certain
acts or things shall be done within a particular time, or in a
particular manner, and does not declare that their perform-
ance is essential to the validity of the election, then they will
be regarded as mandatory if they do, and directory if they
do not affect the actual merits of the election.'   Mr. Paine,
in his work on Elections, (section 498) expresses the same
view in the following language:  'In general, those statutory
provisions which fix the day and the place of the election
and the qualifications of the voters are substantial and man-
datory, while those that relate to the mode of procedure in the
election, and to the record and return of the results, are formal

and directory.' Statutory provisions relating to elections are not rendered mandatory, as to the people, by the circumstance that the officers of the election are subjected to criminal liability for their violation. The rules prescribed by the law for conducting an election are designed chiefly to afford an opportunity for the free and fair exercise of the elective franchise, to prevent illegal votes, and to ascertain with certainty the result. Generally, such rules are directory, not mandatory; and a departure from the mode prescribed will not vitiate an election, if the irregularities do not deprive any legal voter of his vote, or admit an illegal vote, or cast uncertainty on the result, and have not been occasioned by the agency of a party seeking to derive a benefit from them."

Now from an examination of the authorities above cited it will be seen that unless the fact that a lead pencil was used to make the mark instead of the stamp provided by the election law, in some way affected the fairness and validity of the election, such departure from the mode particularly pointed out by law would be treated merely as an irregularity, and the statute in that respect would be treated as directory. California alone seems to follow the strict arbitrary doctrine that every provision of the election law must be strictly followed, but we think upon this proposition, they stand alone, and we think the great weight of authority is in favor of putting that construction upon the law which will at the same time protect the secrecy of the ballot and the fairness of the election, prevent fraud therein, and guarantee to every voter the right to exercise his free, untrammeled choice. Hence we think that the great weight of authority is in favor of the doctrine that if the ballots are in every other respect regular, and no fraud is shown, they should not be rejected for the reason alone that the cross provided by

law is made in the place designated by law, by a pencil in the place of the stamp; and in examining the California cases it will be seen that the main reason assigned for holding that marks made upon the ballot by a pencil or pen, or in any other way than that prescribed by the election law, are invalid, is because the sign, or cross required by the election law is not made in the place prescribed by the law.

But in the case at bar, the cross indicating the choice of the voter is placed on the ballot at the same place that the election law provides it shall be, and the only irregularity is that a pencil was used in the place of a stamp, and we think the correct doctrine is that all ballots which are not marked in a manner prohibited by statute, if in every other way regular, and so marked as to clearly indicate the intention of the voter, and so as to not constitute a distinguishing mark, should be counted as cast.

It would seem that this construction of the election law in some cases might be absolutely necessary in order to insure to the voter his rights in the premises. A great many contingencies might arise, and a great many circumstances surround the election to render the strict enforcement of the statute as to the marking of the ballots impossible, as for instance, in some precinct remote from the county seat of the county, by some unforseen accident, the stamp might be destroyed or lost, or become impaired and rendered unfit for use, and in such case will it be contended that the election should be stopped, or the voter deprived of his right to express his choice by reason of this, or would it be more consistent and reasonable to say that if the ballot was marked in the way prescribed by the election law, and at the place on the ballot designated by law, although the same was done

by a pen or pencil, in the absence of fraud, such a ballot should be counted as cast. For this reason, we think there was no error in the referee counting these ballots for the respective parties for whom they were cast.

The second assignment of error presents to us a peculiar proposition in this. That the arguments and briefs of counsel for both sides proceed upon a theory which is not borne out by the record. Counsel for appellant complains because, as they say, the referee found that there were seventeen ballots on the backs of which the full names of the poll clerks were endorsed, instead of their initials. These ballots he says, were counted, and the court below refused to count said ballots, although he made no specific finding or ruling on said ballots, and approved the report of the referee as a whole. Now it is complained that the court below refused to count these ballots, and it is argued at length by plaintiff in error that these were legal ballots, and should have been counted. It is just as strenuously argued in the brief of counsel for defendant in error that these ballots were illegal ballots, and should not have been counted. Bear in mind the fact that this was an appeal from the decision of the district court affirming the report of the referee, to which decision the defendant in error saved no exceptions, and took no appeal. Now we think the record clearly shows that the very thing contended for by plaintiff in error, that is, that these ballots were legal and should have been counted, was done by the referee, and approved by the court, and upon what theory or upon what foundation the counsel for the respective parties urge this proposition, we are unable to see. A reference to the report of the referee on page 22, of the record, marked "finding No. 9" is as follows:

"I find that there were also seventeen (17) ballots found in said box, upon the back of each of which the full names of the poll clerks were endorsed instead of their initials. Sixteen (16) of said ballots were for the plaintiff, and one (1) for the defendant. I counted the same for the respective parties over the objection of the plaintiff and defendant."

Now it is manifest by this finding of fact in the report of the referee that he did review and count those ballots as cast, and that this forms part of the basis of his decision. Following the filing of this report we find that a motion was made for judgment in favor of the plaintiff in error, notwithstanding this report, which motion was overruled by the court. Then follows a motion to confirm this report, which was sustained by the court, and this report was in all things confirmed and judgment rendered thereon declaring the defendant in error to be the legally elected police judge in and for Ponca City. Following this is the regular motion for new trial filed, overruled, and exceptions saved and nowhere, as shown by this record, was there any change or modification of this report of the referee, but in all things, the court sustained each and every finding of the referee. Now we are at a loss to know, under this condition of the pleadings, how counsel can urge that the court received, or excluded anything which the referee had not received, or excluded, or that he made the count any different from that made by the referee, or made any different finding of law or fact. Hence we think that this assignment of error is not in the record.

It is next contended by counsel for plaintiff in error that ballots stamped in the device, and then stamped in the square opposite the names of the persons voted for on the same ticket should not be counted. In other words, it is

claimed that where the voter puts another stamp upon the ballot which is unnecessary or makes more stamps upon the is necessary on the ballot, that this constitutes a distinguishing mark, and that for this reason the ballots should have been rejected. We do not think this is the correct rule. We think that to constitute a distinguishing mark, that the mark, whether made by the use of a letter, figure or character, should be such a mark as shows an intention on the part of the voter to identify or distinguish his particular ballot from others of this class. And any marks inadvertently made on a ballot, or made through carelessness or ignorance, which does not show upon the face of the ballot that such mark was made with the intention of distinguishing that ballot from others of the same class, or that that result would be accomplished by the mark, should not be treated as a distinguishing mark. Human experience teaches us that it is often very difficult to preserve absolute cleanness and neatness of the ballot. That in marking the various names on the ballot with the device provided by the election officers, a man will through inadvertence or carelessness place a stamp where it is not intended to be, and on discovering the error will immediately correct it, and at the same time this inadvertent or careless marking will not be done with the intention of identifying this particular ballot, nor will such be the result, nor do we think that the law should be so strictly construed as to render, in the absence of fraud, such a ballot illegal. Such seems to be the holding of many of the courts.

In the case of *Parker v. Hughes,* reported in the 67 Pac. at page 637, the Kansas supreme court say:

"When one's name appears upon  a ballot more than once as a candidate for the same office, upon two or more tickets on the same ballot, as might have been the case under chapter 129, Laws 1897, and such name is marked with a cross mark in the squares opposite the same two or more times, such double marked ballot is not thereby made void, but must be counted; the excess of marks being mere surplusage, and not distinguishing marks."

And in the body of the opinion, Mr. Justice Ellis, uses the following language:

"A ballot bearing a distinguishing mark purposely made, should be rejected if the mark is of such a nature or is so placed upon the ballot as that the judges or courts might find in the absence of testimony, or upon testimony if offered, that there are reasonable grounds for believing that such mark was made by the voter with the intent that his ballot should be distinguished from others in the box, then the ballot, as a whole, should be excluded from the count; that, in determining what ballots should be counted the court should look at the questioned one, and from such inspection, aided by the notorious facts and circumstances of the election at which it was cast, determine whether the questioned mark was intended by the voter as a distinguishing mark or not, and if, upon such inspection and consideration, aided by evidence *aliunde* if offered, the court concluded that the mark was made for the purpose of distinguishing the ballot, or might be reasonably thought to be so intended, the ballot should not be counted."

On examination of the ballots attached to the report of the referee and contained in the case made, to which objection is urged by the plaintiff in error, it will be found that the only defect discoverable in these ballots is that the voter in using the stamp has, at the first time, evidently failed to make the mark distinct, and then has re-stamped, and some

times stamped more than once, but we do not think that on an examination of these ballots, any fair mind could come to the conclusion that these additional stamps were placed upon the ballots by the voter with an intent that the same should be distinguishable from other ballots cast at the same election, nor do we think this would be the result, for we have no doubt that if the entire number of ballots cast at that election were before us, there would be found to be many more in the same condition but as only a portion of the ballots, that is the number attached to the case made, are before us, we are unable to say definitely as to this fact, but we do not think that it would be reasonable to conclude that these additional marks were put upon the ballot with the intention of identifying his ballot, or that such would be the result. Hence, we do not think they are distinguishing marks within the meaning of the statute.

These being all of the points raised in the briefs and arguments of counsel for plaintiff in error which we deem material, and finding no error in the record, the judgment of the district court is affirmed.

Hainer, J., who presided in the court below, not sitting; all the other Justices concurring.