## No. 12,132.

GRAHAM, ADMINISTRATRIX, *v.* LINDSEY.

Decided September 16, 1929.

Mr. E. M. Sabin, Mr. James N. Sabin, for plaintiff in error.

Mr. Philip Hornbein, for defendant in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

In an action under our Code Usurpation Act, in substance common law quo warranto, in a controversy over the title to the office of judge of the juvenile court of the City and County of Denver, the district court adjudged that Graham, one of the relators therein, had no right or title to, but that the respondent therein, Lindsey, properly held and occupied this office as the result of the general election in November, 1924. This judgment, on writ of error to this court, was reversed and the cause was remanded to the district court with instructions to reject from its count of the ballots the entire vote for juvenile judge which was cast in precinct 6, district J, and thereupon to render judgment of ouster as prayed against Lindsey, to whom the district court had awarded the office. *People v. Lindsey,* 80 Colo. 465, 253 Pac. 465. After our mandate was received by the district court that tribunal proceeded to execute it. Its record discloses that, after receiving our mandate, the district court upon the entire record of the cause which was before it, made the following specific findings of fact: (1) That because

of frauds in precinct 6 it was impossible for the court to determine the number of legal votes cast therein, and therefore, as directed by the Supreme Court, the entire vote of the precinct should be, and it was, rejected and held for naught. (2) That the returns of the canvassing board of the City and County of Denver, and the result of the canvass by it declared, and the certificate of election which it issued to Judge Lindsey for the office of juvenile judge, were and are null and void and should be held for naught. (3) That defendant Lindsey has unlawfully intruded in, and is unlawfully holding and exercising the duties of, the office. (4) That, rejecting the returns of precinct 6, the court finds that Royal R. Graham, one of the relators, was duly elected to the office by the majority of 424 votes over the vote for the defendant Lindsey. (5) That Lindsey should at once vacate the office.

Upon such findings the district court on June 30, 1927, made and entered a decree that Lindsey had unlawfully usurped the office, that his certificate of election be, and it was, canceled, that the entire vote of precinct 6 be rejected, that Graham was duly elected to the office and Lindsey was not, and that the latter should be, and he was, ordered to desist from exercising its duties.

■■ This decree the district court conceived was a compliance with our mandate. The record discloses no exception to this judgment by either of the parties thereto and we must presume that both of them were represented at the hearing. No reversal thereof has been sought, or had, and no attack upon the judgment by writ of error or otherwise has heretofore been made. It would seem to follow that it is now a verity and binding upon the parties. The prayer of the complaint in that action which culminated in this judgment, asks specifically not only an adjudication of Lindsey's right and title to the office, but also that the title of Graham be determined, and the court adjudicated the title both of the relator Graham and the defendant Lindsey. The dis-

trict court had jurisdiction of the subject matter of the litigation and of the parties and its judgment, not having been set aside, is binding upon them. The present attack on this judgment is a collateral, not a direct, attack, and if the court had jurisdiction of the parties and the subject matter, as we think it had, the collateral attack that has been made upon the judgment fails.

While the writ of error sued out by the relator Graham and his coplaintiff, a citizen of Denver, was pending in the Supreme Court and before final determination thereof, Graham died and the other relator resigned, whereupon Mrs. Graham, widow of Judge Graham and administratrix of his estate, asked the Supreme Court to be substituted as relator with authority further to prosecute the writ. To this application the defendant Lindsey objected, but his objection was overruled and we granted Mrs. Graham's application and she alone as relator further prosecuted the writ of error to a final hearing herein which resulted, as above stated, in a reversal of the judgment of the district court with directions to the lower court to render ouster of Lindsey as prayed.

After the district court had executed our mandate by ousting Lindsey and declaring Graham elected, Mrs. Graham, the substituted relator and administratrix, brought, in the district court after his death, an action against Judge Lindsey to recover the amount of salary which Lindsey had received during the period of time beginning with the first day of the January term of court after the general election in 1924, which was January 13, 1925, and ending on September 9, 1925, the day of Judge Graham's death. The district court found for the defendant Lindsey on the facts and entered judgment accordingly. This is the judgment now before us for review on Mrs. Graham's writ of error. Counsel for plaintiff in error say only two questions are worthy of consideration. The first one is whether Judge Graham was a qualified elector of the city of Denver, and the second, may the administratrix recover the salary, though

Graham was not inducted into office or living at the time Judge McDonough rendered judgment declaring him elected?

Counsel for the defendant in error here relies for affirmance of the judgment upon the following four grounds which we state here as the basis of our discussion: (1) That the de jure title of Judge Graham has never been judicially established and such title cannot be established in this proceeding. (2) The right to a judicial ascertainment of the de jure title abated with the death of Judge Graham. (3) That Judge Graham could not have been inducted into the office of juvenile judge by virtue of the quo warranto which was determined in this court. (4) That Judge Graham was not qualified under the Constitution and statute to hold the office of juvenile judge of the City and County of Denver. A discussion of these propositions is the best and the logical way to dispose of this controversy.

■ 1. The first general proposition is really double, not single: (a) The de jure title of Judge Graham may not be established in this proceeding; (b) it has never been judicially established. The plaintiff has made no attempt in this case to establish title, so that unless Graham's title was judicially established by the McDonough judgment, this action to recover salary fails. At the first trial in the district court in the quo warranto action the complaint alleged specifically not only that Lindsey was not, but that Graham was, elected as juvenile judge. Lindsey in his answer to that complaint joined issue on this allegation and in a separate and affirmative defense specifically alleges not only that he was duly elected, but in an involved and lengthy statement avers that Graham was not elected. It appears, therefore, that each party submitted to the trial court, upon the first trial, as distinct and separate issues, title in each of the rival claimants to this office, and the trial court, naturally and properly as it might in response thereto, specifically made findings of fact on both issues, that Lindsey was,

and Graham was not, elected judge. In our review of this judgment upon both these issues, we annulled the findings and set aside the judgment and remanded the cause with directions to the district court to render judgment of ouster against Lindsey as prayed. In executing our mandate the district court, Judge McDonough presiding, just as Judge Moore had done at the original trial, found upon both issues, although the findings were different in that the McDonough finding and judgment was that Graham was elected and Lindsey was not, and entered judgment accordingly. That judgment has never been set aside. It stands as a verity so far as the parties to this action are concerned. So that it necessarily follows in the trial of this action for salary we must give effect to the McDonough judgment that Graham's title to the office has been established and that Lindsey has no title thereto. True it is that this court in *People v. Londoner,* 13 Colo. 303, 22 Pac. 764, 6 L. R. A. 444, pointed out the distinction between an election contest under our statute and a proceeding in quo warranto, or under our usurpation act. And the consequences of that difference were there pointed out. We there said that a relator who claims title to public office and refuses to avail himself of the contest statute waives his personal claims in connection therewith in a quo warranto action. We do not think, however, that the doctrine of the Londoner case has any application to the controversy here. There were two relators in the pending action, Graham, a claimant of the office, and a private citizen relator. Graham died while the cause was pending and undetermined in the Supreme Court, but after the judgment of the district court was rendered. The other relator resigned. This left the cause in the Supreme Court without a plaintiff in error. Thereupon Mrs. Graham, widow of Judge Graham and administratrix of his estate, filed an application to be substituted as relator in the Supreme Court. Lindsey's objection thereto was overruled and an order was en-

tered permitting Mrs. Graham to enter her appearance as relator with the right further to prosecute the writ of error. She did so with the result already mentioned. Our order in making this substitution is a sufficient answer to the argument and contention of the defendant Lindsey here that the title of Graham could not be determined in the quo warranto action. We permitted Mrs. Graham as relator to proceed with her writ of error, which she did, and therein we determined that Lindsey was not elected. This was done in the quo warranto proceeding. The case is the latest announcement of this court on the subject and is controlling on this review. The title of both Lindsey and Graham was passed upon in both trials in the district court at the request and with the consent of both parties. Neither of them may now in this salary action take an inconsistent position and assert the contrary or complain of our ruling of substitution. It is res judicata of the point now contended for by Lindsey.

■ 2. It is argued that a claim for public office necessarily abates with the death of the claimant. That is true in the sense that the claimant's right to hold the office ceases. This is a different proposition from that which now confronts us. The question here is, may a successful de jure claimant of an office, or his legal representative, recover of a usurping de facto officer the salary which the latter has received during his unlawful occupancy of the office and which belongs to the de jure officer and which the latter would have received had it not been for the unlawful intrusion and occupancy of the usurper? When we permitted Mrs. Graham to be substituted as relator, Judge Graham was not then living. Though this court was divided upon the ruling, the majority so ordered and it is binding on the parties to this action and we shall not ignore it. This court was well aware of Judge Graham's death. He had theretofore qualified and taken every preliminary step to his right of entrance upon the discharge of the duties of

his office. The further prosecution of the quo warranto action by the substituted relator must have been permitted for some reason, and doubtless it was, at least in part, for the purpose of enabling her, if successful, to be in a position to recover the salary which Judge Graham was entitled to if his right to the office was judicially established. Indeed, learned counsel for Judge Lindsey in their petition for a rehearing in the quo warranto action, urged as one of the grounds therefor that if our judgment of ouster of Judge Lindsey is enforced against him, he will become liable to pay the proper relator the salary for that portion of the term during which the original relator, Judge Graham, was alive and that such salary amounts to the sum of about $3,000. They further stated in their petition: ''That under the law of the state of Colorado a judgment of ouster from public office conclusively establishes liability to the de jure officer for the salary received by a de facto officer.'' We quite agree with what the learned counsel said upon this petition for rehearing. It is just as applicable and pertinent now as it was then.

There is no merit in the fourth and last contention of the defendant. Graham's qualification to hold this office was an issue tendered by both parties in their pleadings in the quo warranto proceeding and determined by the court—adversely to defendant Lindsey in the second trial, and on the first hearing in his favor. There has been no attempt so far as the record shows here to have the later, or McDonough, judgment reopened or set aside. It is res judicata as to Graham's qualification.

■■ It is idle to contend, if the doctrine of the Londoner case, supra, is in full force and effect, that the determination of plaintiff Graham's title was erroneous, much less void. Certainly the district courts of this state have the power and jurisdiction in an appropriate action or proceeding to determine the title of a claimant to a public office that has been usurped by another. Defendant concedes that the claimant may properly invoke

248

such jurisdiction in an election contest. If, therefore, the rival claimants, as in this quo warranto case, themselves voluntarily tender the issues both as to relator's and defendant's title, and the court determines the title of both, neither party may thereafter on writ of error or in any other proceeding, be heard to question the jurisdiction which he himself invoked. That is exactly the case before us. Our mandate to the district court "to render judgment of ouster as prayed" the defendant contends is limited to the removal of Lindsey, but the district court, at the second trial, in executing such mandate interpreted it as authorizing a judgment establishing Graham's title and inducting him into office. That judgment is in full force.

Some text books say that a judgment of ouster is restricted to the ouster of the defendant and does not adjudge to his opponent the right to the office. The only cases which we have been able to find directly deciding the question are *Allen v. Patterson,* 85 Ill. App. 256; *Welch v. Cook,* 7 How. Prac. (N. Y.) 282, and *Caldwell v. Wilson,* 121 N. C. 480, 28 S. E. 554. In the Illinois case such an announcement was made, but it was not necessary to the decision of the case. In the New York case it was held that a judgment of ouster actually excluded the defendant from office and the party declared to be elected becomes eo instanti invested with the office and entitled to possession thereof. In the North Carolina case, in an opinion by Clark, Justice, it was held that the judgment of ouster ex proprio vigore places the relator in possession of the office. We refer to these decisions because two of them announce the doctrine that the judgment of ouster in quo warranto by a relator who claims title, operates as his induction into office. In this case, however, the issue of the title of the relator Graham was expressly tendered by the parties themselves and decided by the court. This decision has the effect of destroying Lindsey's title and establishing that of the relator Graham. The judgment at the

second trial, not having been set aside, is binding upon both parties.

Considering the whole case the judgment now under review is wrong and it should be, and must be, reversed, and the cause is remanded to the district court with instructions to vacate the same and enter judgment in favor of the relator Mrs. Graham, for the amount of the salary claimed in the complaint.

MR. JUSTICE MOORE not participating.