No. 13,874.

ISRAEL *v.* WOOD.
(56 P. [2d] 1324)

Decided April 6, 1936.

Mr. C. E. BLAINE, for plaintiff in error.

Messrs. MOYNIHAN, HUGHES & KNOUS, for defendant in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

AT the November, 1932, election Harve E. Israel, referred to herein as the contestor, and Jess M. Wood, referred to herein as the contestee, were rival candidates for the office of sheriff of Ouray county. The canvassing board held that the contestee was elected by a plurality

of two votes. In a contest proceeding, the county court held that the contestee was elected by a plurality of one vote. The contestor brought the case to this court. It appeared that five votes for the contestee were cast by inmates of the county poorhouse. The county court rejected one of them and counted four for the contestee. We held that in counting the four votes for the contestee, the court erred, because it was not shown that the voters were residents of the precinct in which the poorhouse was situated, which was the precinct in which they voted. We reversed the judgment, and, acting under Rule 54, we remanded the cause for evidence and a finding concerning the last place of residence of the poorhouse voters prior to their becoming inmates of the poorhouse. *Israel v. Wood,* 93 Colo. 500, 27 P. (2d) 1024. The county court thereupon took evidence and found that the last place of residence of three of such voters (Cahill, Ogg and Tonoli) prior to their admission to the poorhouse was in precinct 2, the precinct that included the poorhouse, and that their votes should be counted for the contestee. The votes of the other two inmates (Armstrong and Richey) were rejected by the court. The result of the court's finding was that the contestor and the contestee each received 587 votes, making a tie vote, and judgment was entered accordingly.

1. The contestee requests a dismissal of the case on the ground that it has become moot, because the term of office for which the parties were candidates has expired. The motion cannot be sustained. Compensation is an incident to the office of sheriff. If the contestor should be held to have been elected to the office, he would be the de jure officer and would be entitled to recover from the contestee the compensation received by the latter. *Graham v. Lindsey,* 86 Colo. 240, 280 Pac. 884; *Farr v. Neeley,* 66 Colo. 70, 179 Pac. 139; *Drach v. Leckenby,* 64 Colo. 546, 172 Pac. 424; *Arnold v. Hilts,* 61 Colo. 8, 155 Pac. 316. It appears, therefore, that notwithstanding the fact that the term of office has expired, the con-

testor has a substantial legal right depending upon a decision of this case. That being so, he is entitled to have a determination of the questions that are presented by the record. *McClelland v. Erwin,* 16 Okla. 612, 86 Pac. 283.

2. Counsel for the contestor contends that the court's findings as to the residence of Tonoli and Ogg are not supported by the evidence. Of these in their order.

(a) The Tonoli vote.

The county clerk, Kiesel, testified that Tonoli was registered in precinct 3 and voted therein at the 1930 election, and that thereafter and prior to the 1932 election that precinct was merged in precinct 2. There is evidence tending to show, and the court found, that Tonoli's permanent residence was in a cabin near Portland (in precinct 2), but that when the weather got cold he would live temporarily in a shack in another precinct, returning to the cabin near Portland when the warm weather returned. The court did not err in counting Tonoli's vote for the contestee.

(b) The Ogg vote.

The objection now urged against Ogg's vote is that it was not shown that Ogg resided in the state one year before voting. That is something new. No such question was raised before. The only question referred by us to the county court was the question of Ogg's residence just before his admission to the poorhouse, so as to determine whether or not he voted in the right precinct. To that question only was the evidence at the second trial directed. The new question sought to be injected into the case will not be considered by us. The evidence is to the effect that just prior to his admission to the poorhouse, Ogg resided in precinct 2, and had resided there for about a year. The court so found, and the finding was based upon uncontradicted evidence. The court did not err in counting Ogg's vote for the contestee.

3. When this case was here before we said: ''There

are other votes counted for the contestee that the contestor claims should have been rejected; but it is unnecessary to consider the objections to those votes, for a rejection of the votes would merely increase the contestor's plurality, while counting the votes for the contestee could not give him a plurality.''

In view of the new developments in the case, it becomes necessary to consider those objections, as well as certain additional objections urged against the poorhouse votes.

█ (a) Poorhouse votes.

Certain inmates of the poorhouse cast absent voters' ballots. In addition to the objection based upon their residence in that institution, discussed above and in the opinion in 93 Colo. 500, supra, it is said that the voters were fully able, so far as health is concerned, to attend in person at the polls and cast their ballots, and therefore were not entitled to vote by absent voters' ballots. See section 2, page 332, S. L. 1929. The trial court decided, upon sufficient evidence, that the voters were too seriously ill to attend the polls, and hence came within the requirements of the statute. We cannot disturb that finding.

█ Counsel for the contestor urges a further objection to the votes; namely, that no verified applications for absent voters' ballots were made in the manner provided by the Act of 1929, supra. No such objection was made in the verified statement of contest, and therefore cannot be considered at this time.

█ (b) The Burns vote.

Mack Burns, concededly blind, was assisted in the marking of his ballot by his stepdaughter, Anna Grabow. The vote was counted for the contestee. The verified statement of contest alleged, as ground for contesting this vote, that the election judges permitted Anna Grabow, who was neither an election judge nor an election clerk, to assist Burns in marking his ballot. The objection was based upon sections 7744 and 7745, Com-

piled Laws of 1921. Those sections, the former passed in 1891 and the latter in 1913, permitted a disabled voter to be assisted by only election judges or clerks. But in 1927 the General Assembly passed an act (S. L. 1927, c. 97, p. 318) which provides: "If at any primary or general or special election any voter shall declare under oath to the judges of election of the precinct where he is entitled to vote that by reason of blindness or other physical disability, he is unable to prepare his ballot without assistance, then he shall be entitled upon his request to receive the assistance of any one of the election judges or clerks *or at his option of any elector of the precinct to be selected by said disabled voter* but no person other than a judge of election in the precinct shall be permitted to enter the polling booth as an assistant to more than one voter." (Italics are ours.)

That act is controlling in this case. The vote of Burns was not open to the objection made in the verified statement of contest. At the trial the contestor sought to prove that Burns had not taken an oath of disability. The court properly excluded such evidence as not within the issues.

(c) The Kneisler vote.

It is urged that John Kneisler's vote, which was counted for the contestee, should have been rejected. The vote was cast in another state. The objection now made is that in casting his ballot, Kneisler did not "identify himself by duplicating his signature on his duplicate application for an absent voter's ballot just below his other signature," as required by section 3, page 332, Session Laws of 1929. Section 7798, Compiled Laws of 1921, contains the following provision: "When the reception of illegal or the rejection of legal votes is alleged as the cause of the contest, a list of the number of persons who so voted, or offered to vote, shall be set forth in the statement of contestor." That provision is mandatory and must be strictly construed. *Town of Sugar City v. Board of County Commissioners*, 57 Colo. 432,

140 Pac. 809; *Schwarz v. County Court,* 14 Colo. 44, 23 Pac. 84; *Gray v. Huntley,* 77 Colo. 478, 238 Pac. 53. The Kneisler vote is not mentioned in the contestor's verified statement of contest; the contestor, therefore, is not in position to challenge its validity.

 (d) Other absentee votes.

Counsel for the contestor attempted to examine the county clerk with reference to votes cast by May Gould, Virgil Gould, Mrs. W. W. Lancaster, Claude T. Hobson and Nellie M. Hobson. The inquiry was sought to be made in an effort to ascertain whether or not the votes were legal and for whom they were cast. The names of such voters were not included in the verified statement of contest, and for that reason the trial court refused to permit the examination. In doing so, the court did not err. See statute and cases cited in part 3 (c) supra.

 (e) The Iola votes.

Four votes cast in Iola and counted for the contestee are objected to on the ground that they were not mailed, as required by section 3, page 333, Session Laws of 1929. The contestor admits, and the record shows, that the trial court decided the question on conflicting evidence. As there was ample evidence to support the court's finding that the votes were mailed as required by law, we cannot disturb the finding. The court did not err in counting the votes for the contestee.

We find no error in the record.

The judgment is affirmed.