### JOHNSON v. PETTY et al.

No. 18740.    Opinion Filed Sept. 10, 1929.

Lewis C. Lawson and W. T. Blake, for plaintiff in error.

William C. Alley, for defendants in error.

FOSTER, C. This action involves the validity of the guardianship of Ellis Johnson, a minor Creek freedman, and the sale of real estate held pursuant thereto. The land is located in Okmulgee county. The guardianship proceedings were originally filed in Okfuskee county. Silas Johnson, father of the minor, was by order of the county court of Okfuskee county appointed guardian in February, 1908. In 1910, upon petition, he sold the surplus allotment of said minor. The guardianship proceedings were thereafter transferred to Okmulgee county.

This is the second appeal of this case. On the first hearing in the district court, a demurrer was sustained to the petition, from which the plaintiff appealed, and the case was reversed on the ground that the petition stated a good cause of action, same being Johnson v. Petty, 118 Okla. 178, 246 Pac. 848.

On a retrial, after hearing of the testimony, the judge of the district court made the following finding of fact and conclusions of law:

"The court finds that Silas Johnson, in the month of November, 1907, went with his son, Ellis Johnson, to the home of Jack Johnson near Castle, in Okfuskee county, Okla., and that after staying there some two or three weeks, returned to Okmulgee county and took his whole family with him to Jack Johnson's place aforesaid, where he, Silas Johnson, stayed with his entire family, including Ellis, until the latter part of February or the 1st of March, 1908, when he moved with his said family, Ellis included, to Betty Johnson's allotment in Okfuskee county in sections 3 and 3-13-9. There he put out a crop and after a month or two abandoned his family, Ellis included, which family seems to have returned to Okmulgee county in the summer or fall of 1908; such is the nature of the residence of Ellis Johnson in Okfuskee county on January 25, 1908, and this court finds that same is such residence that, all else being fair, is sufficient to authorize the appointment of a guardian by the county court of said county.

"The court finds that on January 25, 1908, a petition for the appointment of Silas Johnson as guardian of Ellis Johnson, a minor, was filed in the county court of Okfuskee county, Okla., and that an order was made setting the hearing of said petition on February 5, 1908, but the mother, Lydia Tiger, who lived near the line between Creek and Okmulgee counties, Okla., some ten or 15 miles west of Beggs, Okla., was given no actual notice of said application, and the hearing on said petition; that upon February 5, 1908, the county court entered an order appointing Silas Johnson guardian of such minor, Ellis Johnson. No bond of said guardian, Silas Johnson, can be found, but there is a record of what purports to be a bond not under the seal of the court, however, of Silas Johnson, guardian, with W. N. Barry, as surety, in the office of the court clerk of Okfuskee county, a copy of which bond record is exhibit No. 6 attached to plaintiff's petition herein. The W. N. Barry, who was supposed to have signed the original bond by the county judge, T. T. Doyle when said judge approved said bond, testifies that he, Barry, never saw any such bond, never signed such a bond, never knew Silas Johnson, and that if there ever was such a bond, the same was a forgery, and this statement is not contradicted by any one. Defendant's exhibit E, letters of guardianship, and the signature of Silas Johnson in the oath and subscribed thereto seem to have been written by the same hand, and that these signatures and this oath, not under the seal of the court, are different signatures from the signature of Silas Johnson subscribed to the inventory and to the jurat of said inventory. Defendant's exhibit F, photostatic copies of said instrument, will be a part of the case-made herein for the inspection of the court, in case an appeal is taken from the action of this court herein.

"The discrepancies in the record of the court relating to the appointment of Silas Johnson, and his qualifications are such as to make us hesitate many times, but taking the record as it appears, and the fact that the court afterwards recognized and treated Silas Johnson as the guardian of Ellis Johnson, we are not prepared, sitting

as a trial court, to say that the record is such as to render all the proceedings therein void, and that said court was wholly without jurisdiction.

## " Conclusions of Law.

"Under the foregoing findings of fact, this court concludes that the county court of Okfuskee county had jurisdiction of the guardianship proceeding of Ellis Johnson, and that the sale thereunder being regular, the judgment should be for the defendant."

From these findings of fact and conclusions of law, the court entered judgment in favor of the defendant, and plaintiff prosecutes this appeal, alleging many assignments of error, but in his brief he argues the same under the following propositions:

(1) That the guardianship proceedings were void because of the invalidity of the guardianship bond.

(2) That the residence of Silas Johnson and Ellis Johnson at the time of the application for the appointment of the guardian was not in Okfuskee county.

(3) The use and occupancy of the land involved in this action.

(4) That the land is restricted and not subject to alienation by guardianship proceedings.

In support of the first proposition, it is contended by plaintiff that the bond in this case was attacked by the allegations of the petition, which was held good in the first appeal, same being Johnson v. Petty, supra. But from an examination of that case, it appears that the validity of the bond was not presented nor decided therein.

It is next contended that the bond is invalid because not signed by any surety. W. N. Barry, who appears as surety on the bond, testified positively that he did not sign it. So far as the record discloses there is no other W. N. Barry in Okfuskee county, and the county judge testifies that he is of the opinion that the W. N. Barry who testified is the same party who is supposed to have signed the bond.

Section 1443, Comp. Stat. 1921, provides that before the order appointing any guardian takes effect, and before the letters issue, the judge must require of such person a bond to the minor, with sufficient sureties, to be approved by the judge. And it is contended that, since there appear to be no sureties on this bond, the same is void, and confers no jurisdiction and all subsequent proceedings are void, including the sale of the real estate.

The appointment of the guardian was made in January, 1908, and the sale was had in February, 1910. At the time of the sale of the land, a sale bond was given and approved by the court as provided in section 1477, Comp. Stat. 1921.

If it should be admitted that, under the record in this case, no bond at all was given at the time of the appointment of the guardian, it perhaps would not necessarily follow that the sale was void. The authorities on the question of whether the failure to give bond makes a guardianship illegal, so as to make void a sale, are divided. Perhaps a majority of the courts hold that the giving of a bond is a condition precedent to the taking effect of the appointment of a guardian, and all acts of the guardian, without bond are illegal, including the sale of land. Van Horn v. Nestoss (Wash.) 169 Pac. 807; Hatch v. Ferguson, 68 Fed. 43. This doctrine seems to be followed by many states, including California, from which our Code was taken.

But many respectable authorities under a statute almost identical with ours hold that, although a bond is required by the statute, failure to give bond does not necessarily make the proceedings void. Hunt v. Insley (Kan.) 42 Pac. 709; Harris v. Chipman (Utah) 33 Pac. 242; Howerton v. Sexton (N. C.) 10 S. E. 148; Leatherwood v. Sullivan (Ala.) 1 So. 718; Mobberly v. Johnson, 78 Ky. 273.

We do not consider the situation here presented as analogous to a case where no bond was given. The record discloses that there was a bond given at the time of the appointment. The guardian signed the bond as principal, and it appears to be signed by W. N. Barry as surety. At the time of the trial of this case, which was about 20 years after the giving of the bond, Barry, who appears to have signed as surety, testified that he did not sign the bond. The original bond itself could not be found, but the record as it appears in the court clerk's office was presented showing the bond to be in regular form, signed by the surety and approved by the judge.

At the time the sale was had, some two years after the appointment of the guardian, an additional sale bond as required by section 1477, Comp. Stat. 1921, was given and approved by the court. The district court made a general finding in favor of the validity of the proceedings. Under this record, we do not believe that such finding should be reversed on appeal to this court,

especially in view of the fact that two months after the sale in May, 1910, another guardian's bond was given, which appears to be regular and legal, and some two months later, in August, 1910, still another bond was given. At the time the last bond was given, the sureties on the bond of May, 1910, were released. During all this time Silas Johnson was recognized as the guardian of Ellis Johnson.

Without deciding whether the failure to give a guardianship bond would render all subsequent proceedings void, including the sale of the guardian's land, we do not believe that, under the record in this case, the finding of the trial court should be set aside on appeal, as the finding of the trial court is not against the clear weight of the evidence. Plaintiff cites many cases from Oklahoma, but we do not believe they are in point.

We think we are further supported in the above holding by the well-established rule that good faith of the court in appointing a guardian, and good faith of the guardian in acting thereunder, is always presumed. The court recognized Ellis Johnson as guardian for more than three years and required him to give three other bonds, to which no objection was made.

It is next contended that Silas Johnson and Ellis Johnson were not residents of Okfuskee county at the time Silas was appointed guardian. The testimony before the trial court is somewhat in dispute. The question of residence is largely a matter of intention, which is to be determined from the facts and circumstances surrounding each case. Residence as a usual thing means a fixed abode, indicating permanency, but the length of time spent in any particular place has very little to do with fixing a domicile or residence. Any time, however short, when coupled with an intent, will be sufficient.

We have carefully examined the testimony in this case before the trial court, and while the same is conflicting, we are unable to say that the finding of the trial court is clearly against the weight of the testimony in determining that Ellis Johnson was a resident of Okfuskee county at the time the appointment was made in 1908.

We have read the numerous decisions cited in the briefs concerning the residence of a ward at the time a guardian is appointed. Many Oklahoma cases hold that the finding of the county court as to residence is conclusive. However, in the case of Jones v. Snyder, 121 Okla. 254, 249 Pac. 313, it was held that where the county court has been imposed upon by fraud as to the residence or domicile of a minor, and where no notice was given to the persons having charge of the minor, although the county court finds the minor to be a resident of the county in which the proceedings are pending, this can be inquired into by a court of equity in a proceeding such as the case at bar.

However, under the facts in the instant case, we think the county court, if the same facts had been before that court, would have been justified in finding Ellis Johnson a resident of Okfuskee county.

The plaintiff further objects on the ground that no proper service was had upon the mother and grandmother of the minor, and that this makes the appointment of the guardian void and the proceedings had thereunder also void under the holding in the case of Jones v. Snyder, supra.

This question was directly decided in the case of Johnson v. Furchtbar, 96 Okla. 114, 220 Pac. 612. That case was an appeal in which the identical guardianship proceedings were involved as in the instant case; the sale of the homestead of this minor being there involved, while the sale of the surplus is involved herein.

Plaintiff further contends that Silas Johnson was living with a woman by the name of Cissley at the time he resided, if at all, in Okfuskee county, and that he had not been divorced from his previous wife, Lydia. Assuming this to be correct, we cannot see how it would have any effect upon the legal residence of Ellis, who was living with him, although his relationship with Cissley may have been unlawful and immoral.

It is next contended that the record does not disclose any necessity for selling the land. We do not believe there is any merit to this contention. The petition to sell the land alleges a necessity, and the county court so found. We believe this is final in the absence of fraud. Abraham v. Homer, 102 Okla. 12, 226 Pac. 45.

The next question presented by the plaintiff is an accounting for the use and occupancy of the land during the time it was held by the defendants. Owing to our holding on the other questions presented. we do not deem it necessary to pass upon this proposition.

The next and final contention of the plain-

tiff is that the Act of Congress of May 27, 1908, did not remove the restrictions on the minor Creek freedman as to the alienation of his land. We think this question has been settled many times by our court as well as the federal court. Loman v. Paullin, 51 Okla. 294, 152 Pac. 73; McIntosh v. Dill, 86 Okla. 1, 205 Pac. 917; Egan v. Ingram, 58 Okla. 766, 161 Pac. 225.

However, if there could be any doubt as to the law concerning the removal of restrictions, so far as this case is concerned, the matter was definitely decided in the case of Johnson v. Furchtbar, supra, in which the homestead allotment of this identical freedman was involved, the last paragraph of the syllabus of that case being as follows:

"Under the Act of May 27, 1908, the only restriction on the sale of the land of a minor Creek freedman was that it should be sold through the probate court, and this act of Congress did not destroy any vested right existing in the allottee under the provisions of the Original Creek Agreement."

It is also contended that the land involved herein was restricted at the time the appointment of the guardian was made, and, if the restrictions were removed at all, they were not removed until May, 1908, the appointment being made in January, 1908. We do not believe there is any merit to this contention. No attempt was made to alienate the land until long after the Act of May 27, 1908, took effect. The fact that the guardian was appointed before the removal of the restrictions could not, in our opinion, affect the validity of this sale.

For the reasons herein given, we believe the judgment of the trial court should be and is hereby affirmed.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.