OPINION OK THE COURT
Justices DOWTY and LEEDS.
On the 13th day of March, 2003, this matter comes on as regularly scheduled for hearing and is properly before this Court pursuant to Article VII of the Constitution of the Cherokee Nation (1975), Article VI, Section 2 of the Constitution of the Cherokee Nation (1975) as amended by a vote of the People pursuant to Council Resolution 27-95, and Title 26 CNCA (LA 7-97), Section 37.
I. STATEMENT OF THE CASE
The Appellant Robin C. Mayes appeals from an adverse ruling of the Cherokee Nation Election Commission on February 27, 2003, denying his challenge to the candidacy of Chadwick Smith for the office of Principal Chief In his challenge, Appellant asked the Commission to declare that Chadwick Smith was not a qualified candidate for the office of Principal Chief because his bona fide permanent residence was at an address outside the historic boundaries of the Cherokee Nation. At the hearing held by the Election Board on February 27,2003, the Board denied the challenge and provided written notice thereof Mr. Mayes has brought timely appeal before this Court.
II. FINDINGS OF FACT
The Court has received, reviewed and considered the record made before the Election Commission including exhibits received by the Commission. In addition, we have allowed testimony by the parties and have received and considered all exhibits properly admitted in the hearing before this Court.
The evidence established that the Appel-lee Smith maintains two places of abode. The first is located at 8324 Hillwood Drive, Tulsa, Oklahoma within the boundaries of the Creek Nation. The house is a multistory residential home of approximately 3000 square feet. Smith and his wife began living there in 1986. The Smiths moved to Tahlequah for a brief period in 1991, and returned to the Tulsa property. The property was conveyed in 1993 from Smith’s mother to Smith and his wife. The parties stipulated that Appellee Smith claimed the mortgage interest deduction on this property on his 2002 joint tax returns and that he has continuously paid personal property taxes and ad valorem taxes on this property and has not paid any similar taxes at any other place. The evidence showed that Appellee Smith’s wife and children live in this house; that the two younger children attend local schools; and, that Mrs. Smith is a registered voter in Creek County, Oklahoma. The contested evidence disclosed that in 2002, Mr. Smith may have stayed at the house between 100 and 159 days or 27% to 44% of the time. Smith claims no homestead exemption on this property or on any other property. We received mortgage documents from 1997, wherein the Appellee was required to occupy this prop *55 erty as his principal residence for a period of one year from the execution of the documents.
Smith’s second place of abode is at 118— A Keetoowah Street, Tahlequah, Oklahoma. The property is one unit of a duplex apartment and is rented on a month-to-month basis without a written lease. Mr. Smith has continuously occupied the property since July, 1998. He pays utilities there and keeps furnishings and amenities consistent with his occupancy. Mr. Smith claims that this is his residence and this property is the basis for his compliance with the 270 day residency requirement of candidacy for the office of Principal Chief
In addition to evidence of the properties involved, we have received and considered other evidence of residency. Consistent with the applicable list of documentary evidence considered before the Commission, we have received and considered the following:
1. The current drivers license of the Appellee with the address 118-A Keetoowah Street, Tahlequah, Oklahoma;
2. Utility bills in the name of the Ap-pellee for the property at 118-A Keetoowah Street, Tahlequah, Oklahoma;
3. A stipulation as to the content of income tax returns evidencing a claimed deduction for taxes paid on the property at 8324 Hillwood Drive, Tulsa, Oklahoma;
4. Voter registration documents evidencing that Chadwick Smith registered and voted in Delaware County in 2000, and transferred his registration to Cherokee County in July 2002, declaring his voter residence to be 118-A Keetoowah Street, Tah-lequah, Oklahoma.
In addition, the Appellee testified that he receives mail at the Tahlequah address. However, the evidence also indicated that he received mail at the Tulsa address. He presented vehicle titles, and a CDIB card evidencing the Tahlequah address.
III. CONCLUSIONS OF LAW
The issue presented is W'hether Appellee Smith meets the residency requirement to be a candidate for the office of Principal Chief for many years, the Cherokee people have sought to require all candidates for Principal Chief to live within the historical boundaries of the Cherokee Nation. The 1975 Constitution, for whatever reason, abandoned a territorial approach to Cherokee sovereignty by permitting individuals that reside outside the Cherokee Nation to run for and hold the office of Principal Chief Article VI, Section 2 of the 1975 Constitution, as ratified, states:
The Principal Chief of the Cherokee Nation shall be a citizen of the Cherokee Nation of Oklahoma in accordance with Article III. He shall have been born within the boundaries of the United States of American, its territories or possessions; and shall have obtained the age of thirty (30) years at the time of his election and be a member by blood of the Cherokee Nation of Oklahoma.
In 1994, the Appellee caused a “test ease” to be filed before this Court in Leach v. Tribal Election Commission, JAT 94-1, 4 Okla. Trib. 225, - Am. Tribal Law —— (Cherokee 1995). Leach was a resident of New Mexico and objected to LA 2-94, imposing a requirement that a candidate for chief be a resident of the historic boundaries of the Cherokee Nation. By opinion filed February 21, 1995, this Court held that the Council did not have the power to impose this residency requirement and that the people would have to amend the Constitution to do so. Subse *56 quently, in 1995, pursuant to Council Resolution No. 27-95, Article VI Section 2 of the Constitution was amended and approved by the voters. The amendment passed by a “yes” vote of 10,111, and a “no” vote of 1457. The Amendment provides:
The Principal Chief of the Cherokee Nation shall be a citizen of the Cherokee Nation in accordance with Article III; shall have been born within boundaries of the United States of America, its territories or possessions; shall ham established a bona fide, permanent residence within the historic boundaries of the Cherokee nation for no less than 270 days immediately preceding the day of the general election in which he or she was elected; and shall have obtained the age of thirty (30) years of age at the time of his or her election and be a member by blood of the Cherokee Nation. (emphasis added)
The Tribal Council then passed LA 7-97, codified as Title 26, replacing the entire then-existing Cherokee Election Code. LA 7-97 sought to implement the residency requirement passed by the Cherokee people in the 1995 referendum.
During the 1999 election season, the referendum was challenged and found to have failed to meet the Constitutional requirements for passage because the referendum had not yet been “approved by the President of the United States or his authorized representative” as required by the self-imposed; restrictions of Article XV of the 1975 Constitution. McLain v. Cherokee Nation Election Commission, JAT 98-12, 6 Okla. Trib. 582, 1 Am. Tribal Law 38 (Cherokee 1998). See also Ragsdale v. Cherokee Nation Election Commission, JAT 98-19, 6 Okla. Trib. 591, 1 Am. Tribal Law 42 (1998).
Finally, in 2002, the Secretary of the Interior approved the 1995 referendum of the Cherokee people establishing the residency requirement for candidates for Principal and Deputy Chief. The 2003 election is the first election for which the residency requirements^ are in effect. This Court has jurisdiction to review any decisions of the Cherokee Nation Election Commission pursuant to 26 C.N.C.A. § 37 (LA 7-97). As recently stated, Title 26 affords no statutory reference to the decisions of the Election Commission and this Court will review such appeals de novo. In re DeMoss, 8 Okla. Trib. 101, 4 Am. Tribal Law 48 (Cherokee 2003).
Title 26 provides no direction on the requisite burden of proof for challenges to candidacy. In DeMoss, the facts were largely undisputed and the case turned on the legal question of whether a motor home could constitute a “true, fixed and permanent home” under the Cherokee election laws. This Court unanimously concluded that a motor home could be a residence without being permanently affixed to the land but did not articulate a burden of proof to be applied in all election challenges. In DeMoss, the candidate clearly met the residency requirements as a question of fact, yet interpretation of the election law was at issue. In the present case, the factual determinations are markedly more difficult than in DeMoss and a clear pronouncement of the burden of proof is necessary.
Appellant Mayes’ proposal that both parties meet a burden of proof is compelling and will be adopted by this Court with some modification. This Court finds that the candidate seeking office has the preliminary burden of showing, by a preponderance of the evidence, that the candidate meets the residency require *57 ment.[1] This burden can be met, in part, by verifying residence in a similar manner to that outlined in 26 C.N.C.A. § 34(B):
Verification of residence may be shown by one or more of the following documents. Provided always that such documents show one or more addresses within the required geographic area for a continuous period in excess of 270 days: (1) current driver’s licensees; (2) Utility bill or bills; (3) Income tax return for the preceding year; (4) state or county voter’s registration; (5) homestead exemption; (6) a bona fide document evidencing such verification.
It should be noted that § 34(B) was held to be null and void as to candidates for Principal Chief and Deputy Chief in McClain, supra. Such factors are, nevertheless, probative on the question of residency and will be considered herein. The Court notes, however, that the candidate’s burden of proof is not necessarily met by simply showing that one or more of the factors exist. Although such factors are probative, they are never independently dispositive on the issue of residence and domicile. Such factors must be reviewed in light of the specific circumstances in each case.
Once the candidate seeking office meets the initial burden of proof, the burden shifts to the challenging party to prove, by a dear and convincing standard, that the candidate fails to meet the residency requirement. The burden once shifted to the challenger is notably a higher standard because the right to run for office, upon meeting certain threshold requirements, is a guaranteed and fundamental right under the Cherokee Constitution and any action by this Court which infringes on that right must be subjected to a strict standard. Lay v. Cherokee Nation Election Commission, JAT 99-10, 6 Okla. Trib. 62, 1999 WL 33589134, *2, 2 Am. Tribal Law 16, 20-21 (1999); See State v. Johnson, 212 W.Va. 343, 571 S.E.2d 333, (2002)(noting “the right to become a candidate for election to public office is a valuable and fundamental right.”); See also Russell v. Goldsby, 780 So.2d 1048, 1051 (2000) (noting “the person objecting to candidacy bears the burden of proving the candidate is disqualified” and that the “laws governing the conduct of elections must be liberally construed so as to promote rather than defeat candidacy.”).
Appellee Smith meets the threshold burden of proof that he resides in the Tahleq-uah duplex. The testimony of his landlord stated the apartment had been rented by Smith for five years, and Appellant Smith testified that he has actually resided in the duplex during the 270 day residency time frame at issue. There was no evidence to suggest that Smith fails to physically reside, at least part of the time, in the duplex.
Appellee Smith also has a current driver’s license, voter registration, and utility bills indicating his address is in Tahlequah. Smith testified that he resides in the apartment; has furniture, clothes, computers, desks and other personal items in the apartment; and, that he intends to reside in the apartment indefinitely.
Appellant Mayes challenges Appellee Smith’s residency on the grounds that Smith’s true and permanent residence is within the Creek Nation where Smith’s wife and children reside. Appellant Mayes provided evidence that suggests, based on Oklahoma Turnpike Authority pike pass records, Appellee Smith often spends the *58 night in the Creek Nation home. The pike pass records compiled by Appellant Mayes suggests it is possible that Appellee Smith spent as many as 159 nights in the Creek Nation in 2002. Appellant Smith states it is possible he spent 100 nights in 2002 in the Creek Nation home. Appellant Mayes evidence that Smith “actually” resides at a home other than the apartment claimed for residency requirements is somewhat persuasive as this Court is convinced Smith spends somewhere between 27% and 44% of his evenings at the Creek Nation residence. The Court, hearing no evidence to the contrary, must presume that the remaining 56% to 73% of Smith’s time is spent at the Tahlequah duplex.
This Court must determine, for purposes of Cherokee election law, whether Appellant Smith meets the residency requirement under the Constitution by establishing “a bona fide, permanent residence within the historic boundaries of the Cherokee Nation.” Art. VI, § 2. We find that a bona fide permanent residence is synonymous with domicile and apply the same laws applied in DeMoss.[2]
In DeMoss, this Court relied on the persuasive authority of several jurisdictions and concluded that residence is synonymous with domicile. A person’s domicile is the place where he has a true, fixed and permanent home and principal establishment to which, when absent, he intends to return. This Court also noted that a person may only have one domicile at a time. DeMoss. 8 Okla. Trib. 101, 2003 WL 24313595, *2, 4 Am. Tribal Law 48, 50-51, (citing Jones v. Burkett, 1959 OK 221, 346 P.2d 338 (1959)).
This case tons on whether Smith’s domicile is the duplex in Tahlequah or his home in the Creek Nation. Appellee Smith readily admits his wife and children live outside the Cherokee Nation but indicates he intends, and has intended, to make the duplex in Tahlequah his legal residence or domicile. He notes that he was well aware of the residency requirement and did everything legally necessary to comply with it, which included establishing his legal residence and domicile apart from his family.
Appellee Smith testified that he has intended and continues to intend his permanent domicile and legal residence to be the duplex in Tahlequah. No evidence was proffered to indicate he does not physically reside in the Tahlequah duplex. The evidence produced at the hearing went heavily toward making his residence and domicile in Creek Nation rather than refuting his residence and domicile in the Cherokee Nation.
During closing argument, Appellant pointed the Court to the persuasive authority found in Moore v. Hayes, 744 P.2d 934 (1987). Moore involved a contested election where the challenger contested the residency of certain voters and is instructive for several reasons. First, as Appellant urges, Moore defines residence as being synonymous with domicile, as we similarly held in the DeMoss. Moore also instructs that “the dominant element in *59 determining ‘legal residence’ or ‘domicile’ is the intention to abandon the former domicile and to acquire another without the intention of returning.” Moore, 744 P.2d at 937 (parenthetical omitted). This quotation, read in isolation, would seem to indicate, that, if Appellee Smith has not permanently abandoned all ties to his Creek Nation residence, then it would be impossible for him to establish the Tahleq-uah residence as his domicile. Rut, the Moore case continues, in the next sentence, with the following language: “When the existence of a legal residence or a domicile at a certain place has been shown, it will be presumed to continue until a contrary intention is shown.” Id. Appellee Smith’s former legal domicile at the Creek Nation home is presumed to have continued until he formed the intention, backed up by actions, to make the Tahlequah duplex his home. Such actions include getting a driver’s license and registering to vote based on the Tahlequah residence. Other actions that manifest his intent are the moving of furniture and personal effects to the Tahlequah residence, and ultimately, physically residing in the Tahleq-uah residence a majority, albeit a slim majority, of the time.
The Moore decision and other persuasive authority permit the possibility of maintaining one or more separate homes. See Apodara v. Chavez, 788 P.2d 366 (N.M.1990). “Other factors which have been recognized as persuasive in determining intent are the holding of local office, the exercise of the right to vote in local elections, business and domestic relations, community activities, personal habits, and other objective facts ordinarily manifesting intent.” Moore, 744 P.2d at 937 (citing Larson v. Bunch, 208 Okla. 278, 255 P.2d 486 (Ok 1953)); Richmond v. Richmond, 225 S.W. 126-27 (Mo.App.1920); and Suglove v. Oklahoma Tax Commission, 605 P.2d 1315, 1317-18 (OK 1979). Appellee Smith meets many of these factors, but yet the question of whether a candidate can have a legal domicile different from his spouse and children requires further analysis.
In Aran v. Mejias, the courts of the state of New York reviewed a challenge to state senate candidacy to resolve whether a candidate could meet the residency requirement by claiming an apartment separate from his family. 230 AD.2d 675, 646 N.Y.S.2d 515 (1996). The candidate claimed his residence was a small apartment in a housing authority complex, while purportedly maintaining a residence in New Jersey where he lived with his wife and child. Like Appellee Smith, the New York candidate claimed to live in the apartment although he was neither divorced or legally separated from his wife.
In Aran, it was noted that a “candidate having two residences may choose one to which he has legitimate, significant and continuing attachments as the residence for the purposes of the Election Law.” Aran, 230 A.D.2d at 675, 646 N.Y.S.2d 515 (citations omitted). In Aran, the New York candidate was found not to be legitimate because his reported income for the contested period would have disqualified him from the residency in the housing authority, which was designated for low income families. Furthermore, the housing authority had never given permission to the candidate to reside on the premises permanently. Aran, 230 A.D.2d at 676, 646 N.Y.S.2d 515.
Unlike the New York candidate, there is no evidence that would lead this Court to believe the Tahlequah residence of Appel-lee Smith is illegitimate or insignificant. He has the permission of the landlord to reside in the Tahlequah duplex, has paid rent, established utility service and to some extent, has physically resided there. *60 Appellee Smith has indicated by testimony and actions that he chooses the Tahlequah residence as his legal residence and domicile over the Creek Nation residence.
Courts must be cognizant of modern realities in which demands of career and other factors can lead individuals to spend time at several different locations. Nothing in the Cherokee Constitution prohibits a candidate from having more than one actual residence. The Constitution requires an individual candidate to have a “bona fide, permanent residence within the historic boundaries of the Cherokee Nation” for the requisite time period. Appel-lee Smith has met the bare minimum residency requirements under the Cherokee Constitution and Appellant Mayes, although successful in establishing Smith’s significant connections to the Creek Nation home, fails to adequately refute Smith’s residency in the Tahlequah duplex. The decision of the Cherokee Nation Election Commission is hereby upheld.
This Court is mindful of the seriousness of this matter and urges extreme caution to all candidates, present and future, in their compliance with the will of the Cherokee people as manifest in the residency requirements. In the 1995 referendum, the people clearly intended that their representatives live among them and experience life, first hand, as experienced by the Cherokees who reside within the Cherokee Nation. The requirement of bona fide permanent residence has been met in this matter by a detailed factual analysis and is extremely case specific. Appellee Smith’s actual physical residence at the Tahlequah duplex is crucial and this Court is by no means sanctioning fictitious “paper” residences. Conversely, it is beyond the scope of this Court’s power to burden candidates with additional criterion for residency not expressed in the Constitution. Therefore, the Court cannot adopt a rule precluded multiple residences or placing residency requirements on the spouses and children of candidates.
The Court appreciates the cooperation and prompt attention given to the Court’s requests for the record and exhibits from the Election Board hearing. We do, however, recommend that the Board do more to preserve the testimonial record made before that body. This would greatly assist this Court in reviewing the actions of the Board and alleviate the necessity of repetitious testimony.
IT IS ORDERED that the decision of the Cherokee Nation Election Board, entered on the 27th day of February, 2003, denying the protest of Robin C. Mayes to the candidacy of Chadwick Smith for the office of Principal Chief, is hereby AFFIRMED.

. It is for this reason that Appellee Smith’s demurrer to the evidence at the close of Appellant Mayes' case in chief cannot be granted.

. Although the parties did not raise objections to the applicability of LA 7-97 until pressed by this Court, we note that in McLain v. Cherokee Nation Election Commission, JAT 98-12, 6 Okla. Trib. 582, 1 Am. Tribal Law 38 (Cherokee 1998), this Court held the statute’s residency provisions for the office of Chief and Deputy Chief null and void because they purported to impose stricter standards than did the Constitution pending formal approval of the 1995 referendum. It is the opinion of this Court that the Council should revisit LA 7-97 in light of the McLain decision. The Court’s decision today is grounded in the language of the Constitution as informed from common law definitions of residence and domicile