ORDER

RALPH F. KEEN, Justice.

Background

In 1999, the Cherokee Nation will hold general elections in which Cherokee voters will vote for the candidates running for the offices of Principal Chief, Deputy Principal Chief, and all fifteen (15) seats on the Council of the Cherokee Nation (“Council”). Franklin McLain (“McLain” or “Petitioner”) states that he plans to seek the office of Deputy Principal Chief.
Article VI, Executive, Section 2, of the Cherokee Constitution establishes the qualifications a person must have to serve as Principal Chief of the Cherokee Nation. Article VI, Executive, Section 3, of the Cherokee Constitution requires those same qualifications for the holder of the office of Deputy Principal Chief.
As will be later discussed, in the 1995 general election, the Cherokee people approved a referendum pui'porting to amend the Cherokee Constitution by adding the following language to Article VI, Executive, Section 2,
“shall have established a bona fide, permanent residence within the historic boundaries of the Cherokee Nation for no less than 270 days immediately preceding the day of the general election in which he or she was elected”.
This clause shall be referred to herein as the “permanent residence requirement”.
Subsequently, the Council passed Legislative Act No. 7-97, codified as 26 CNCA Section One, et seq. [effective May 12, 1997] (the “Act”) which superseded the entire then-existing Cherokee election code. Among other things, the Act implements the permanent residence requirement [1]. The Act also established the Cherokee Nation Election Commission (“Commission” or “Respondent”) and assigned specific duties to it.[2]
McLain has brought this action against the Commission seeking declaratory relief in relation to his candidacy. Specifically, McLain seeks an order of the Court declaring that he meets the requirements of Cherokee law for a candidate seeking the office of Deputy Principal Chief, in relation to the permanent residence requirement.

Facts

The allegations stated in McLain’s Complaint can be summarized as follows. McLain is a citizen by blood of the Cherokee Nation. He inherited a house from his grandmother (an original enrollee) in Jay, *40 Oklahoma, which is within the boundary of the Cherokee Nation as described in the Treaty of 1828 (“1828 treaty”) between the Cherokee Nation and the United States of America. McLain has been in possession of the house in Jay for several years which he alleges he maintains as his residence.
McLain also claims that he owns a home in Blackwell, Oklahoma, and that Blackwell is within the boundary of what is known as the Cherokee Outlet which was in the possession of the Cherokee Nation, under the 1828 treaty, until about 1893 when it was transferred to the federal government. Accordingly, McLain claims that the Blackwell home is within the historic boundary of the Cherokee Nation.
McLain alleges he stays at his Blackwell home from Sunday evening to Friday evening, and returns to, and stays at, his home in Jay on the weekends, all holidays, and for various extended periods of time while attending to business within the Cherokee Nation.
McLain claims that his “legal residence” is in Jay, and that he pays taxes, utilities, etc. regarding that home. In response to a letter from the Court to both parties, McLain submitted an affidavit in support of his allegations regarding his home in Jay, and to the affidavit he attached copies of utility receipts.
McLain claims that both of his homes, in Jay and in Blackwell, are within the historic boundary of the Cherokee Nation, and that Blackwell, as a former reservation, may still be under the jurisdiction of the Cherokee Nation through federal law.
The Respondent initially responded to Petitioner’s Complaint with a Motion to Dismiss and an Answer. The Motion to Dismiss was previously overruled.
In its Answer, the Respondent argued basically these claims.
First, the Respondent claims that the lawsuit is premature, and can not become an issue until after February 10, 1999, the closing of the filing period. It is then, and only then, they argue, that they will decide which candidates meet the legal requirements for filing for their respective offices.
Second, the Respondent states, If Petitioner’s residency status, as presented in his verified Complaint, is correct, it would be the position of the Commission that he does, in fact, meet the residency requirements set out in the Election Code, [emphasis added].
Third, the determination of whether Blackwell, Oklahoma is to be included [as being within the historic boundaries of the Cherokee Nation], for purposes of the permanent residence requirement, is far beyond the scope and authority of the Commission.
Now, however, the Respondent Election Commission has done an apparent about-face, and now argues that since the purported constitutional amendment that established the permanent residence requirement was not submitted to the federal authorities for approval, as is required by our Constitution[3], the purported amendment is null and void, and of no legal significance.
For now, at least, the Court need not address any of the ambiguities found in the permanent residence requirement. The matter has become moot. The Respondent filed a “Response to Petitioner’s Affidavit”[4], and to it was attached a letter, dated December 15, 1998, signed by the Acting Area Director, Jimmy Humming *41 bird (“Director”), Muskogee Area Office, Bureau of Indian Affairs, United States Department of the Interior. In the Director’s letter it is stated, we find no record of the amendment [permanent residence requirement] being submitted to the Secretary for approval.

Issue

Does the Constitutional amendment that purportedly established a permanent residence requirement, prevent the Petitioner from seeking, and if elected, holding the office of Deputy Principal Chief of the Cherokee Nation.
Now, the Court need not address the issues that were originally presented in this case. Instead, we need only to decide whether or not the amendment has met all of the Constitutional requirements for passage. We find that it has not.

Discussion

Article XV. Initiative, Referendum and Amendment, Section 10, of the Cherokee Constitution, states, “No amendment or new Constitution shall become effective without the approval of the President of the United States or his authorized representative”. The Secretary of the Interior is the President’s authorized representative.
Any proposed amendment to the Cherokee Constitution must be approved by the President, or his authorized representative. It is obvious from the Director’s letter that this procedure was not followed. Even approval by the Secretary at this late date would not be sufficient to validate the amendment for the 1999 election since the 270 day limit has already passed, and the Constitution prohibits ex post facto laws[5].
The Cherokee Constitution is the organic document of the Cherokee government. It must not be trifled with. Any and all amendments to the Cherokee Constitution must be made following the strict, long-established procedure. That procedure was not followed in this case.
We now turn our attention to that part of the legislative Act that purports to implement the unconstitutional permanent residence requirement. The parties have not raised the issue of the validity of the Act. However, with the Court’s finding regarding the permanent residence requirement, the issue of the Act’s validity is necessarily mandated upon the Court because of the Court’s Constitutional obligation to interpret Cherokee law[6]. In performing its duty to interpret Cherokee law, the Court finds that those parts of the Act purporting to implement the permanent residence requirement are a nullity.[7] This ruling is not to be construed as finding the entire Act is a nullity. Section Two of the Act states that “THE PROVISIONS OF THIS ACT ARE SEV-ERABLE AND IF ANY PROVISION HEREOF SHALL BE HELD VOID, THE DECISION OF THE COURT SO HOLDING SHALL NOT AFFECT OR IMPAIR ANY OF THE REMAINING PROVISIONS OF THIS ACT”.
*42 The following sections[8] of the Act place more stringent restrictions on candidates for the offices of Deputy Principal Chief and Principal Chief than are required by the Cherokee Constitution, and, accordingly, are void as being in violation of the Cherokee Constitution:
(1)Section 31(A)(C) [to the extent it refers to the permanent residence requirement by implication, and is applicable to candidates for Deputy Principal Chief and Principal Chief], (2) Section 32(8),
(3) all of Section 34 [to the extent it is applicable to candidates for Deputy Principal Chief and Principal Chief], and
(4) Section 36(8)(2) [to the extent it is applicable to candidates for Deputy Principal Chief and Principal Chief].

Holding

The Court holds that question, of whether or not McLain qualifies as a candidate for Deputy Principal Chief of the Cherokee Nation under the permanent residence requirement and Cherokee Code provisions enacted to implement it, is moot.
The Court further holds that the permanent residence requirement is unconstitutional, and therefore, a nullity; as are:
(1) Section 31(A)(C) [to the extent it refers to the permanent residence requirement by implication, and is applicable to candidates for Deputy Principal Chief and Principal Chief],
(2) Section 32(8),
(3) all of Section 34 [to the extent it is applicable to candidates for Deputy Principal Chief and Principal Chief].
(4) Section 36(8)(2) [to the extent it is applicable to candidates for Deputy Principal Chief and Principal Chief], and,
(5)Commission Rule § 2.08(C) insofar as it applies to candidates for Deputy Principal Chief and Principal Chief.

. Legislative Act No. 7-97, §§ 31, 32, 34, and 36, in whole, or in part, arose as a result of the permanent residence requirement, or purport to implement it as being a part of Article VI, Executive, Section 2. [26 CNCA §§ 31, 32, 34, and 36].

. Legislative Act No. 7-97, § 11. [26 CNCA § HI

. Cherokee Const, art. XV, § 10.

. The “affidavit” referred to is that, described above, filed bv Petitioner regarding his residence in Jay, Oklahoma.

.Cherokee Const, art V. Legislative, § 8. No laws passed by Council shall have retroactive effect or operation. Indian Civil Rights Act of 1968, incorporated through Article II, Bill of Rights, 25 U.S.C. § 1302(9), No Indian tribe in exercising powers of self-government shall-(9) pass any bill of attainder or ex post facto law.

. Cherokee Const, art. VII.

. Bobby Leach v. Tribal Election Commission of the Cherokee Nation, Case No. JAT-94-I

. The Commission has promulgated rules and regulations pursuant to § 11(0)(7) of the Act. Commission Rule § 2.08(C), insofar as it applies to candidates for Deputy Principal Chief and Principal Chief, also violates the Cherokee Constitution and is void.