ORDER
DARRELL DOWTY, Justice.
On the 23rd day of March, 1999, a hearing was held before this Court upon the Petition and Application of Nick Lay seeking relief from the decision of the *19 Cherokee Nation Election Commission [hereinafter “Commission”], entered on or about the 16th day of March, 1999, wherein, by written Order, the Commission permanently disqualified the Plaintiff from holding elected office in the Cherokee Nation. The Plaintiff, Nick Lay, appeared in person and with James Wilcoxen, his Attorney. The Defendant Commission appeared by Donald G. Hopkins and Christine P. Folsom-Smith, its Attorneys.
This matter is properly before this Court pursuant to the provisions of Legislative Act 7-97 [hereinafter the Act], enacted by the Council of the Cherokee Nation on the 12th day of May, 1997. Specifically, the Commission acted under the provisions of § 38 of the Act and these proceedings are governed by § 37 thereof Plaintiff timely filed his appeal on the 17th day of March, 1999, pursuant to § 37(B) of the Act within five (5) days of receipt of notice of his disqualification and this Court gave notice and timely set hearing in this matter pursuant to § 37(C) of the Act.
STATEMENT OF THE CASE
On the 26th day of February, 1999, the Commission issued its Notice of Hearing in case No. CNEC-99-01, directed to Nick Lay and commanding him to appear before the Commission on the 11th day of March, 1999, to answer to two (2) counts of interference with the Commission in the performance of its duties, citing 26 CNCA § 38 and § 2.10 of the Rules and Regulations of the Commission. On said date, hearing was held in executive session before the Commission with all members in attendance with Christine P. Folsom-Smith, its Attorney and Nick Lay appearing in person and with James Wilcoxen, his Attorney. The filings, exhibits and transcript of that proceeding have been made available to this Court together with a copy of the relevant Rules and Regulations. Subsequently, on or about the 16th day of March, 1999, the written Order of the Commission issued as hereinabove cited. From said Order, Plaintiff filed his appeal on the 17th day of March, 1999.
THE ISSUES AND THE FACTS
The Plaintiff has timely filed his Declaration of Candidacy with the Commission for the office of Council Member for District 8 and is an incumbent candidate for the office. The Constitution of the Cherokee Nation (1976) provides that “Any member by blood of the Cherokee Nation at least twenty-five (25) years of age on the date of the election may be a candidate for the Council”. The right to run for political office upon meeting these threshold requirements, is granted and guaranteed by the Constitution and any action by the Government which infringes on this right must be subjected to the strict scrutiny of this Court, both as to procedural and substantive issues. It is from this posture that our inquiry must begin.
This is a case of first impression asking this Court to review the action of the Commission under LA 7-97 and specifically, § 38 thereof Legislative Act 7-97 at § 38, delegates to the Commission the authority and duty to permanently disqualify a candidate who “... directly of indirectly interferes or attempts to interfere with the Election Commission in the performance of its duties..[1]”. The Rules and Regulations *20 adopted by the Commission control the proceedings of the Commission hearing and the Commission must prove by “a preponderance of the evidence” that the acts alleged occurred before permanent disqualification to hold elected office is mandated[2].
The allegations contained in the Commission’s Notice were twofold, to-wit that Plaintiff interfered with the Commission in the performance of its duties by:
1. usurping the authority of the Commission in assuming the responsibility for determining the eligibility of precinct workers based on possible relationships by affinity or consanguinity to candidates, and
2. diverting time, services and limited funds supporting the duties of the Commission to the voters, by the filing of lawsuits in JAT-97-05, JAT-97-06 and JAT-99-08 and by bringing protest petitions without merit before the Commission.
In the Commission’s Order issuing from the hearing, the Plaintiff was permanently disqualified to hold elected office with the Cherokee Nation by attempting to interfere with the duties of the Commission based upon the following grounds by a preponderance of the evidence:
1. By attempting to usurp the authority of the Cherokee Nation Election Commission in the hiring of precinct workers;
2. By committing perjury in a letter to the Cherokee Nation Election Commission, a letter that became an exhibit to JAT 99-08, a petition submitted under an affidavit sworn to and signed by the Respondent as true and correct; and
3. By diverting time and money from the 1999 Cherokee Nation voters to obtain the heretofore nonexistent 1995 actual voters list and further, causing the limited funding allocated to the Cherokee Nation Election Commission to be diverted to attorney’s fees rather than critical voter-oriented projects.
This Court must first take notice that the Order of the Commission is defective on its face in that it fails to recite findings of fact and conclusions of law as required by the Rules and Regulations of the Commission[3]. Under our duty of strict scrutiny, for this reason alone, the Order of the Commission cannot stand. However, given the gravity of the lower decision and critical time frame of the *21 approaching election, the Court will address the substantive issues of law and fact attendant to the Commission’s decision.
As to the first finding by the Commission in its Order, the facts adduced at the hearing before this Court were as follows:
On or about February 15, 1999, Plaintiff sent a letter to the Cherokee Nation Election Commission requesting the names and addresses of the precinct workers in the next election[4]. On February 19, 1999, the Commission responded to Plaintiffs request by letter from its Attorney denying his request[5]. On February 23, 1999, the Plaintiff filed his appeal of the denial by the Commission for the precinct workers list in JAT-99-08, which matter is presently pending before this Court.
The Court has listened to the argument of counsel in light of the evidence above and can see no basis upon which the Commission could have concluded by a preponderance of the evidence that the delivery of the letter request by the Plaintiff to the Commission constituted a usurpation of the authority of the Election Commission to determine the eligibility of precinct workers. The evidence upon which the Commission’s finding was made was purported to be the content of the letter stating the reason for which the Plaintiff needed the precinct worker's list. There was no evidence to indicate that the Plaintiff was intending to use the lists to usurp the authority delegated to the Commission.
The Defendant argued that the timing of the request was premature since the lists were not yet available and precinct workers had not been contracted. Defendant implied that the Plaintiff should have known that his request was premature, particularly since he, as a member of the Council, was present when the legislation was drafted and passed. We cannot find from the language of the statute or the evidence that the Plaintiff should have known that his request was premature and the Commission did not raise the issue when it had the opportunity in its reply letter denying the request. Plaintiffs subsequent appeal of the denial of precinct worker lists to this Court appears to have been in good faith.
 The Commission’s second finding was that the Plaintiff committed perjury in his letter to the Commission, the substance of which is set out in footnote 4 herein. We must first point out that the Constitution of the Cherokee Nation (1976) and both § 38 of LA 797 and the Rules and Regulations of the Commission require the fundamental elements of due process, to-wit: 1) Notice of the charges to be defended against, and 2) A fair hearing and adju *22 dication of the charges[6]. Neither the written Notice nor the evidence discloses that the Plaintiff was apprised that he would be required to defend against a charge of perjury at the hearing. Therefore, as to this finding, the proceedings are fundamentally flawed by insufficient notice and a lack of due process.
Further the finding of the Commission as to the purported act of perjury is in error as a matter of law. The charge of perjury under the laws of the Cherokee Nation is found at CNCA Title 21, § 491 and is taken directly from the corresponding penal code of the State of Oklahoma [7]. The elements to prove a charge of perjury in this matter are:
1. Making or subscribing;
2. A statement;
3. Known by the Plaintiff to be not true;
4. Under Oath;
5. Authorized by law in a trial, hearing, investigation, deposition, certification or declaration[8].
 We need not address the issue of whether the Plaintiffs statement in his letter was true or false and we are cognizant that evidence was presented on both sides of that issue. If any element above is not supported by the evidence, the finding of the Commission must fail. The evidence is deficient in two respects. First, the statement was not given under oath. The fundamental requirement for perjury in this case is that the Plaintiff was sworn to tell the truth, and in disregard of that oath, knowingly made a statement that he knew was not true. Although it may be morally reprehensible for a person to lie, no legal sanction may be imposed for lying until after a person has sworn to tell the truth. The statement made by the Plaintiff in his letter cannot be the basis for a finding of perjury because it was not given under oath.
Second, the statement in the letter requesting the Precinct worker lists was not one required or authorized in one of the proceedings cited in the 5th element. It was a statement voluntarily made in a letter request to the Commission. The evidence before the Commission and this Court fails to establish proof of this element of perjury by a preponderance of the evidence.
*23 The Order of the Commission would appeal' to imply that the statement contained in the letter takes on the characteristics of a sworn writing by having been attached to Plaintiffs verified Petition filed in JAT-99-08. We do not agree. The verification does not reach or address the truth of falsity of attachments, whether authored by the Petitioner or a third party. The fundamental requirement for a finding of perjury by the Commission is that the statement, when made to the Commission, was made under oath The evidence has failed to show the statement was perjurious and this finding of the Commission cannot support the disqualification of the Plaintiff to hold elected office.
The Commission’s third finding upon which the decision to disqualify was based, was that the Plaintiff attempted to interfere with the Commission in the performance of its duties by “diverting time and money from the 1999 Cherokee Nation voters to obtain the heretofore nonexistent 1995 actual voters list and further, causing the limited funding allocated to the Cherokee Nation Election Commission to be diverted to attorney’s fees rather than critical voter-oriented projects.” Plaintiffs original request for the voters list was denied by the Commission. He appealed and obtained an Order in JAT-97-06 requiring the production of the lists. The Defendant did not contest in the hearing before this Court, the right of the Plaintiff to pursue his legal lights by appeal. Nor is it controverted that the Plaintiff prevailed before this Court in JAT-97-06. What the Defense does argue is that the Plaintiff, by exercising these rights, diverted the time and limited funds of the Corn-mission from their use in benefiting the voters of the Cherokee Nation.
This Court can certainly sympathize with the Commission in its funding limitations. AU of the branches and departments of government have been under the onus of funding by continuing resolution limiting services to the detriment of the citizens of this Nation. This condition is unfortunate, deplorable and we trust and hope for a speedy resolution that restores the operations of this government to full capacity and potential.
Nevertheless, a citizen of this Nation who, by exercising his legal rights under our Constitution, causes a reallocation of limited funding and resources, cannot be held to account for the impact such exercise has on the operations of government. The Plaintiff had a legal and Constitutional right to pursue his remedies in this Court[9] . To allow a sanction and penalty to be imposed upon a citizen of this Nation for such exercise would have a chilling effect on the free exercise of the rights and privileges granted and guaranteed to each citizen by the Constitution. For this reason, the third finding of the Commission upon which disqualification of the Plaintiff was based, must fail.
The defense pointed out in opening and in summary, the adverse publicity attending this litigation. We were made aware of some allegations in that regard. This Court was not, and should never be influenced in any way by matters extraneous to its proceedings. Further, it is to the credit of Counsel for both sides that they in no way encouraged or participated in such conduct. Counsel for Defendant stated, and the evidence supported his as *24 sertion, that the Con mission was not motivated by any political agenda or outside influence. The evidence was that the Commission acted responsibly and in good faith in carrying out its duties with regard to the hearing afforded the Plaintiff. They were operating under the mandatory restrictions of the Act and the evidence was that they would have considered lesser sanctions if the law governing the proceedings had allowed such consideration.
As stated at the outset, this Court must apply a strict scrutiny to the actions of the Commission where a right of political expression by seeking elected office is being permanently banned. We find both the Act authorizing disqualification and the Rules and Regulations governing the hearing troubling under Constitutional scrutiny of equal protection.
As an example, in § 37 of the Act, the qualifications of a candidate may be challenged and a candidate may be disqualified from a single election. The procedure to be followed before the Commission is essentially as stated for permanent disqualification, that is: notice, hearing and proof by a preponderance of the evidence that the candidate does not qualify for the office.
There are two distinct differences between § 38 and § 37, denying a candidacy for lack of qualifications. One, the qualifications are clearly delineated in the Act and are subject to proof by objective criteria, e.g., proof of residency; proof of age, etc. Second, the sanction is disqualification only as to a single election. In contrast, § 38, subjects the Plaintiff to the sanction of permanent disqualification from ever holding elected office upon proof before the Commission by a preponderance of the evidence of highly subjective criteria, e.g., attempting to interfere with the duties of the Commission. This harsher penalty is authorized under the Act and the Rules and Regulations of the Commission under the same minimal burden of proof as disqualification from a single election and, upon criteria that are not objectively defined.
Also, in § 45(C) of the Act, any candidate or other named entity may be banished from doing business with, or' from membership in the Cherokee Nation upon a showing before the Court of a violation of campaign expenditure and contribution laws.
Elsewhere in the Act, at § 46(E), a candidate who certifies a Financial Disclosure Report and fails to disclose fully the receipt of contributions, can be subjected to criminal sanctions in Court where the proof is beyond a reasonable doubt and is banned from elected office for only five (5) years.
Only in § 38 is the sanction of permanent banishment authorized, not before a Court, but before an appointed Commission as delegated by the Council of the Cherokee Nation in its legislation. The sanction may be imposed upon proof by a preponderance of the evidence of the commission of acts undefined by objective criteria.
In the present critical time frame of the election process, the Court declines to burden the Commission with action on substantive changes in its Rules and Regulations. However, after the run off election and recounts, if any, we strongly recommend that both the Council and the Commission revisit LA 7-97 and Rule 2. 10, addressing a method of direct judicial review of cases involving permanent disqualification of candidates, defining the underlying criteria and raising the burden of proof required for such findings.
IT IS THEREFORE ORDERED BY THE COURT that the Order of the Election Commission of the Cherokee Nation, *25 issued on or about the 16th day of March, 1999, in CNEC-99-01, be vacated, set aside and held for naught and that the candidacy of the Plaintiff, Nick Lay for the Council of the Cherokee Nation, District 8, be fully restored in all respects. The Election Commission is directed to immediately take all steps necessary to comply with this Order.
THE COURT FURTHER ORDERS and authorizes the consideration of reasonable attorneys fees to the Plaintiff upon proper written application to be filed not less than 10 days from the issuance of this Order.
Chief Justice VILES Concurs.

. § 38 Disqualification of Candidate
“Any candidate who directly or indirectly interferes or attempts to interfere with the Election Commission in the performance of its duties, or who improperly influences or attempts to influence the Election Commission in the performance of its duties, shall be permanently disqualified by the Election Com *20 mission from holding any elected office of the Cherokee Nation after hearing held in conformance with regulations adopted by the Election Commission for the conduct of proceedings before the Election Commission. ...”

. Rules and Regulations of the Cherokee Nation Election Commission, Section § 2.10 Disqualification Proceedings: Interference with Commission
A. “Any candidate who directly or indirectly interferes or attempts to interfere with the Commission in the performance of its duties, or otherwise violated Section 38, of the Election Law, shall be subject to disqualification proceedings before the Commission.
B. (Not applicable here)
C.At the Hearing, the charges shall be brought in the name of the Cherokee nation by and through the Cherokee Nation Election Commission. The burden of proof shall be on the Nation to prove the charge by a preponderance of the evidence ...”

. Rules and Regulations of the Cherokee Nation Election Commission, Section § 2.10(E)
(E) At the close of the hearing, The Commission may render its decision or consider the evidence in one or more executive sessions. The Commission’s decision shall be in writing and shall be sent to the candidate and all attorneys appearing in the case via personal delivery or first class mail. The decision shall clearly and succinctly state the finding and conclusions of the Commission.

. Plaintiff’s Exhibit 1
"I request the names and addresses of the precinct workers in the next election. This request will not be distributed; but it is for the purpose to see if any candidate are related to the precinct workers. This is necessary because in the 1995 election there were at least two precinct workers in the Tulsa precinct directly related to an incumbent council member. It is for this reason I am making this request.
Please send me this information at your earliest convenience.
Thank you,
Nick Lay”

. Plaintiff's Exhibit 2
‘‘Dear Mr. Lay
The Cherokee Nation Election Commission has denied your request for names and addresses of precinct workers for the upcoming election. The precinct workers Survey adequately handles this matter. A precinct worker must affirm that he or she is not related by consanguinity or affinity to a candidate for office. I have enclosed a copy of the survey for your convenience.
Very Truly Yours,
/s/ Christine P. Foisom-Smilh”

.Constitution of the Cherokee Nation of Oklahoma (1976), Article VII
"... The Council shall provide for a procedure which shall insure that any litigant receives due process of law together with prompt and speedy relief.”
§ 38. Disqualification of Candidate
”... Such regulations shall provide the candidate reasonable notice of the charge and the opportunity to respond at a hearing before the Election Commission, and shall specify the manner in which such charge shall be presented and by whom ...”
Rules and Regulations of the Cherokee Nation Election Commission, Section § 2.10(B) ”... If the Commission determines in its discretion that the evidence supporting the charge merits institution of disqualification proceedings, the Commission shall give the candidate written notice of a hearing to be held not less than 10 days from the date of service of the same on the candidate by personal delivery or certified made. The notice shall specify the charge in reasonable detail”.

. § 491. Perjury defined-Defense
”... Whoever, in a trial hearing, investigation, deposition, certification or declaration, in which the making or subscribing of a statement is required or authorized by law, make or subscribe a statement under oath, affirmation or other legally binding assertion that the statement is true, when in fact the witness or declarant does not believe that the statement is true or knows that k is not true or intends thereby to avoid or obstruct the ascertainment of the truth, is guilty of perjury ...”

. 21 CNCA (1994), § 491, Oklahoma Uniform Jury Instruction No.CR-3-18

. Constitution of the Cherokee Nation of Oklahoma (1976)
Article II. Bill of Rights
"The judicial process of the Cherokee Nation shall be open to every member of the Cherokee Nation. Speedy and certain remedy shall be afforded under the terms of this Constitution for every wrong and injury to person, property or reputation ...”