Dissenting Opinion of Chief Justice
MATLOCK:
After reviewing the majority opinion and concurrence, I respectfully dissent and offer the following:
Factual Record
The parties entered into a stipulation of facts to govern this Court’s determination and are as follows:
1. A person cannot enroll in the Cherokee Nation without a Certificate Degree of Indian Blood (CI)IB) card or an ancestor listed on the Dawes Rolls with a degree of Cherokee, Loyal Shawnee, or Delaware Cherokee blood.
2. A person cannot complete the Cherokee Nation enrollment process without a CDIB card or an ancestor listed on the Dawes Rolls with a degree of Cherokee, Loyal Shawnee, or Cherokee Delaware blood.
3. The Plaintiff, Lucy Allen does not possess a CDIB card. The Plaintiff has been denied a CDIB card by the Cherokee Nation and the Bureau of Indian Affairs but has not appealed the decision of the Bureau of Indian Affairs to the appropriate Federal District Court.
4. That the language of the 1975 Constitution of the Cherokee Nation controls in this case.
I take judicial notiee that Article III of the 1975 Constitution of the Cherokee Nation has not been amended and that 11 C.N.C.A. § 12 has not been amended.
I take judicial notice the Cherokee Freedmen, Delaware Cherokees and Shawnee Cherokees were citizens of the Cherokee Nation prior to the adoption of the 1975 Constitution of the Cherokee Nation.
I further find that the parties’ stipulation of facts and my judicial notice findings put the issues raised by the Petitioner, Lucy Allen, squarely within the issues decided by this Court in Riggs v. Ummerteskee, JAT 97-03, 3 Am. Tribal Law 10, 2001 WL 36155524 (2001) by unanimous decision on August 15, 2001 and therefore the Petitioner’s request for relief must fail for the reason of the doctrine of stare decisis and that the Petitioner has failed to prove standing.
I further adopt the universally accepted doctrine of stare decisis to promote a stable and orderly system of justice in Cherokee Nation juris prudence.

Majority’s Incorrect Factual Record Citations

No where in the evidentiary record can be found that the Plaintiff, Lucy Allen, is a *33 descendant of individuals listed on the Dawes Commission Rolls as “Cherokee Freedmen”.

Petitioner’s Request for Relief

The Petitioner, Lucy Allen, in her pleadings has, in effect, asked this Court to revisit the decision rendered in the Riggs case, and I will for the limited purpose of explaining the findings of the Riggs decision, address the following issues which are joined in these proceedings:
1. Does Article III Section 1 of the 1975 Constitution of the Cherokee Nation include the Cherokee Freedmen as persons eligible for citizenship in the Cherokee Nation?
2. Is 11 C.N.C.A. § 12 as enacted by the Council, constitutional under Article III of the 1975 Constitution of the Cherokee Nation?
Discussion
1. ARTICLE III SECTION 1 OF THE 1975 CONSTITUTION OF THE CHEROKEE NATION DOES NOT INCLUDE THE CHEROKEE FREEDMEN AS PERSONS ELIGIBLE FOR CITIZENSHIP IN THE CHEROKEE NATION.
A. The Court in the ease of DeMoss v. Jones, JAT 96-01, 1998 WL 34067263 set forth the rules of construction the Court uses when interpreting the 1975 Constitution of the Cherokee Nation.
1. “The 1975 Constitution of the Cherokee Nation of Oklahoma, totally, completely and unconditionally replaces the 1839 Constitution of the Cherokee Nation of Oklahoma in its entirety and none of the provisions of the 1839 Constitution remain in force or in effect.”
2. “In interpreting a Cherokee Nation Constitutional provision our goal is to give effect to the intent of its framers and the people adoption it. To determine this intent we look to the instrument itself and when the text of a constitutional provision is ambiguous, this Court in constructing it is not at liberty to search for meaning beyond the instrument” (emphasis added)
3. “Words or terms used in construction on ratification by the people voting upon it must be understood in the sense most obvious to the common understanding at the time of its adoption.”
4. “That words appearing in the constitution are presumed to have been used according to their ordinary, plain, natural and usual signification and import.”
B. The United States Supreme Court in Santa Clara v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) confirmed the right of Sovereign Tribes to determine their citizenship.
The Court in the Riggs decision looked to all the language of the 1975 Constitution of the Cherokee Nation to clarify the language of Article III Section 1.

THE AUTHORITY OF THE PREAMBLE IS TO BE A GUIDE TO THE MEANING OF THE CONSTITUTION AND THE CONSTITUTION IS TO BE CONSIDERED AS A WHOLE AM) NOTA COLLECTION OF UNCONNECTED PARTS

The Preamble of the 1975 Constitution of the Cherokee Nation sets forth the language,
“We, the people of the Cherokee Nation, in order to preserve ... our tribal culture ... do ordain and establish this Constitution ....” (emphasis added)
The word tribe or tribal, according to English dictionaries, refers to a group of *34 persons having a common character, or who come from the same ancestor: an ethnic group, (emphasis added)
It is apparent that the word tribal refers to the Cherokee Indians who are joined by their common character and ancestry. Synonyms for ancestry are blood, bloodline and genealogy.
The word culture is defined in part by English dictionaries as social forms or material traits of a racial group, (emphasis added)
Again, it is apparent that the word culture refers to the Cherokee Indians who are joined by a material trait and is a racial group, (emphasis added)
Therefore, the framers of the 1975 Constitution of the Cherokee Nation and those who adopted it were defining the language that follows the Preamble and were obviously preserving the Cherokee Indians identity and autonomy.
The language of Article III Section 1 of the 1975 Constitution of the Cherokee Nation:
“All members of the Cherokee Nation must be citizens as proven by reference to the Dawes Commission Rolls, including the Delaware Cherokees of Article II of the Delaware Agreement dated the 8th day of May 1867, and the Shawnee Cherokees as of Article III of the Shawnee Agreement dated the 9th day of June, 1869, and/or their descendants.”
When considered in light of the Preamble of the Constitution the words contained in Article III, Section 1, “All members of the Cherokee Nation” must be interpreted to mean, “All Cherokee Indians of the Cherokee Nation”, and, the words in Article III, Section 1, “must be citizens as proven by reference to the Dawes Commission Rolls” is a mandate of genealogy which can only be accomplished by tracing one’s bloodline.
The use of the foregoing common word definitions and elementary language construction rules produce the meaning of the language of Article ill, Section 1 of the 1975 Constitution which is as follows:
“All Cherokee Indians of the Cherokee Nation must be citizens as proven by bloodline to the Dawes Commission Rolls including the Delaware Cherokees of Article II of the Delaware Agreement dated the 8th day of May 1867, and the Shawnee Cherokees as of Article III of the Shawnee Agreement dated the 9th day of June 1869, and/or their descendents.”
This interpretation is also supported, by the framers and the people adopting it, finding it necessary to expressly include two other ethnic classifications of people listed on the Dawes Commission Rolls, those being the Delaware Cherokees and the Shawnee Cherokees and who also were members of the Cherokee Nation prior to the adoption of the 1975 Constitution of the Cherokee Nation. The majority opinion correctly sets forth that the three ethnic groups, Cherokee Freedmen, Shawnees and Delawares were in the same legal position on the eve of the adoption of the Constitution. If the three ethnic groups had the same legal status before the adoption of the Constitution, it would be logical that all three ethnic groups would have to be expressly included as citizens. Any other interpretation and particularly the one adopted by the majority opinion would indicate that the Cherokee Freedmen had a superior right to citizenship status than the Delaware Cherokees and the Shawnee Cherokees; and, that was not the case as admitted herein by the majority opinion. The majority decision also mentions that it was argued some Freedmen actually did vote in the Constitution adoption election. The evidentiary record is void as to this speculation and as to whether or not the *35 Freedmen voted against or for the Constitution.
The majority opinion goes to great lengths of historical rhetoric to prove what is obvious; that the Cherokee Freedmen were citizens of the Cherokee Nation prior to the adoption of the 1975 Cherokee Nation because of the 1866 amendment to the 1839 Constitution of the Cherokee Nation. However, the majority opinion fails to point out that the Treaty of 1866 and the 1866 amendment to the 1839 Constitution of the Cherokee Nation which was a direct result of the 1866 Treaty was brought about by duress from the United States Federal Government after the Cherokee Nation chose the losing side of the Civil War. The Dawes Rolls were a product of the United States Government and not the Cherokee Nation. My colleagues in the majority opinion have failed to cite any instance where the Cherokee Nation voluntarily granted citizenship to the Cherokee Freedman prior to and after 1866.
The majority opinion completely ignores the Preamble of the 1975 Cherokee Nation Constitution and attempts to justify their position by citing documents that are outside the language of the 1975 Constitution of the Cherokee Nation and the evidentia-ry record as presented by the parties herein. By so doing they have violated the precedents they profess to follow as set out in DeMoss v. Jones, JAT 96-01, 1998 WL 34067263 and sound principles of due process.
It is irrelevant what the Muskogee (Creek) Nation, the Choctaw Nation or the Chickasaw Nation did or didn’t do in their constitutions.
The strong intent of preservation of tribal culture expressed throughout the 1975 Constitution of the Cherokee Nation requires that the Cherokee Freedmen would have to be expressly included as one of those ethnic groups in the language of the 1975 Constitution as are the other ethnic groups, Shawnee Cherokees and Delaware Cherokees before they would be eligible for citizenship.
2. 11 C.N.C.A. § 12 IS CONSTITUTIONAL AS WRITTEN
The Court in Riggs applied the following well established principles of considering a statute’s constitutionality:
A. A heavy burden is cast on those challenging a legislative enactment to show its unconstitutionality and every presumption is to be indulged in favor of the constitutionality of a statute. If two possible interpretations of a statute are possible, only one of which would render it unconstitutional, a Court is bound to give the statute an interpretation that will render it constitutional, unless constitutional infirmity is shown beyond a reasonable doubt. A Court is bound to accept an interpretation that avoids constitutional doubt as to the legality of a legislative enactment. It is firmly recognized that it is not the place of this Court, or any Court, to concern itself with the statute’s propriety, desirability, wisdom, or its practicality as a working proposition. The judiciary cannot challenge the wisdom, need or desirability of any constitutionally valid legislation. Such questions are plainly and definitely established by our fundamental law as functions of the legislative branch of government.
The foregoing language was found in Fent v. Oklahoma Capital Improvement Authority, 1999 OK 64, 984 P.2d 200, cert. denied 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999) and should be adopted by this Court.
B. The “Riggs Court”, contrary to the wrong assumption expressed in the majority opinion, did apply the. precedents set forth in both, McLain v. Cherokee Nation Election Commission, JAT 98-13, 1 Am. Tribal Law 38, 1998 WL 34067271 and *36 Leach v. Tribal Election Commission, JAT 94-01, 1995 WL 1078440. That being,
“Any Legislative Acts that would establish requirements over and above those in the Constitution are contrary to the Constitution, and as such would be unconstitutional.”

ARTICLE V SECTION 7 OF THE 1975 CONSTITUTION OF THE CHEROKEE NATION

“The Council shall have the power to establish laws which it shall deem necessary and proper for the good of the Nation, which shall not be contrary to the provisions of this Constitution.... ”
empowers the Council to enact 11 C.N.C.A. § 12.
The language of 11 C.N.C.A. § 12,
“A. Tribal membership is derived only through proof of Cherokee Blood based on the final rolls.... ”
pertains only to the Cherokee Indians which is consistent with the foregoing interpretation of Article III, Section 1. It does not apply to the constitutionally granted citizenship of the Delaware Cherokees of Article II of the Delaware Agreement dated the 8th day of May, 1867 and the Shawnee Cherokees as of Article III of the Shawnee agreement dated the 9th day of June, 1869, and/or their descendants by reference to the Dawes Commission Rolls. If 11 C.N.C.A. § 12 were applied to the Delaware Cherokees and the Shawnee Cherokees it would obviously be an unconstitutional application of said enactment. The language of 11 C.N.C.A. S 12(B) applies to the Cherokee Indians, Delaware Cherokees and the Shawnee Cherokees for tribal membership.

CONCLUSION

The majority of the Court has chosen to ignore the simple reading of the language of the whole 1975 Constitution of the Cherokee Nation and instead has engaged in the difficult task of determining not what the Constitution indicates but what it should say and how it should say it. This approach, obviously caused the majority to engage in conjecture, and, cannot be done without violating the precedents set forth in DeMoss v. Jones, JAT 96-01, 1998 WL 34067263. The 1975 Constitution of the Cherokee Nation does reference the Dawes Commission Rolls, but only for the limited purpose of determining who is listed on those rolls and how they have been characterized. This reference was not an invitation to this Court to examine the inadequacies of that document.
The Cherokee Indians as a Nation were almost forced into extinction by the United States Federal Government and for the first time since the adoption of the 1839 Constitution of the Cherokee Nation, the Cherokee Indians seized the opportunity in 1975 to exert their sovereign status and maintain their autonomy by defining its citizenship in the 1975 Constitution of the Cherokee Nation and this Court should not weaken that expression by relying on any events occurring prior to 1975.
For these reasons, I would deny Petitioner’s request in all respects and thereby leave the precedents set forth in Riggs v. Ummerteskee, JAT -97-03, 3 Am. Tribal Law 10, 2001 WL 36155524 (2001), undisturbed.